SKAG-WAY DEPARTMENT STORES, INC., A CORPORATION, APPELLANT, V. CITY OF GRAND ISLAND, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

125 N. W. 2d 529

Filed January 3, 1964. No. 35512.

J. Taylor Greer, Woods, Aitken & Aitken, and William G. Blackburn, for appellant.

Franklin L. Pierce and Richard L'. Huber, for appellees.

Herbert M. Fitle, Bernard E. Vinardi, Frederick A. Brown, Edward M. Stein, Sebastian J. Todero, Walter J. Matejka, and Frederick S. Geihs, for amici curiae.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, and BROWER, JJ., and RONIN, District Judge.

MESSMORE, J.

This is an action brought by Skag-Way Department Stores, Inc., a corporation, plaintiff, against the City of Grand Island, a municipal corporation, the Councilmen, Mayor, and Chief of Police of the City of Grand Island to temporarily and permanently restrain the defendants from enforcing the provisions of a city ordinance (hereinafter described) and to have the ordinance declared null and void. The trial court entered a temporary restraining order restraining the defendants from enforcing the ordinance. A stipulation was filed by the parties agreeing that the hearing on the application for temporary injunction be continued; that to conserve time and expense, the plaintiff's application for temporary injunction and permanent injunction be heard together; and that the restraining order previously issued remain in effect until further order of the court.

By order of the trial court, this case was consolidated for trial with three other cases wherein the plaintiffs sought to enjoin the enforcement of the ordinance here involved, which suits were filed subsequent to the instant suit. These suits are as follows: Grand Island Baking Co. v. City of Grand Island; James W. Bost, doing business as The Bost Pharmacy v. City of Grand

Island; and R. W. Crow, doing business as Top Hat TV v. City of Grand Island.

Trial was had to the court. The trial court found generally in favor of the defendants in each of the four cases. The trial court in each case held the ordinance valid, and concluded that the City of Grand Island, by its proper officials, was authorized to enact a regulatory ordinance affecting the welfare of the city and regulating its trade and commerce; that the city charter and applicable statutes were complied with; that the ordinance was legally and properly enacted and became effective October 13, 1962; that continued violation of a valid ordinance constitutes a nuisance; and that the City of Grand Island was authorized to abate such nuisance.

The plaintiff filed a motion for new trial on March 4, 1963. On March 20, 1963, the motion for new trial having not been heard or decided, the plaintiff filed a notice of appeal from the decree of the trial court, and on March 21, 1963, perfected appeal to this court. On April 5, 1963, the trial court heard arguments on the motion for new trial and overruled the motion. On April 5, 1963, the plaintiff filed in the trial court its notice of appeal from the order of the trial court overruling its motion for new trial and perfected appeal to this court. On April 18, 1963, the plaintiff filed an application in this court for injunctive relief pending appeal, together with an affidavit in support of the application. This court granted the plaintiff's application and entered a restraining order pending appeal which temporarily restrained and enjoined the defendants from enforcing the ordinance pending final determination of this action or until further order of the court.

The City of Grand Island is a city of the first class under the laws of this state, and is governed by a home rule charter.

For convenience we will refer to Skag-Way Department Stores, Inc., a corporation, as plaintiff or Skag-Way;

to the City of Grand Island as city or defendant city; and to the councilmen of the city, the mayor, and chief of police as defendants, and on occasions the names of persons here involved as may be necessary.

The plaintiff contends that the Sunday closing ordinance at issue in this appeal was published only once in the Grand Island Daily Independent on October 6, 1963; and that section 16-405, R. R. S. 1943, prescribes the requirements of publication of ordinances adopted by cities of the first class, and provides in part: "* * * and all ordinances of a general nature shall, within one month after they are passed, be published in some newspaper published within the city, or in pamphlet form, to be distributed or sold, as may be provided by ordinance; and every ordinance fixing a penalty or forfeiture for its violation shall, before the same takes effect, be published *for at least one week* in some manner above prescribed; * * *." (Emphasis supplied.)

The plaintiff further contends that article 4, section 5, of the home rule charter adopted by the citizens of the city in 1928, prescribes the identical requirements as stated in section 16-405, R. R. S. 1943, and requires that every ordinance fixing a penalty or forfeiture for its violation be published for "at least one week."

The ordinance in question does fix a penalty for its violation. It is an ordinance of a general nature, and its stated purpose is to establish a common day of rest for the citizens of the city.

The plaintiff relies on two cases, one of which is Union P. Ry. Co. v. Montgomery, 49 Neb. 429, 68 N. W. 619, wherein this court passed upon the language of chapter 14, article 2, section 51, Comp. St. 1889, which is, with one exception, identical with the language contained in section 16-405, R. R. S. 1943, and the language contained in article 4, section 5, of the home rule charter of the city. This court held in the cited case that an ordinance of the city of South Omaha which specified a speed limit for trains in the city and prescribed a

penalty for its violation, should not have been admitted in evidence because it was not a validly enacted ordinance. The cited case held that an ordinance which carried a penalty for violation of its provisions, before it becomes effective, must be published for at least one week in a newspaper published within such city, and if published in a daily paper, one insertion was not sufficient, but it must be published in each issue thereof for one week. To the same effect is the case of Union P. Ry. Co. v. McNally, 54 Neb. 112, 74 N. W. 390.

In the light of the foregoing authorities, the plaintiff asserts that the ordinance in question was not validly enacted and is void because it was not published in accordance with the law governing the publication of such an ordinance.

Section 25-2228, R. R. S. 1943, provides in part: "All legal publications and notices * * * that may by law be required to be published a certain number of days * * * shall be legally published when they have been published in one issue in each week in a daily, semiweekly or triweekly newspaper, such publication * * * to be made upon any one day of the week upon which such paper is published, except Sunday, * * *. Nothing in this act contained shall be construed as preventing the publication of such legal notices * * *. All legal publications and all notices of whatever kind or character that may be required by law to be published * * * shall be and hereby are declared to be legally published when they shall have been published once a week in a weekly, semiweekly, triweekly or daily newspaper * * *."

The purpose and intention of the Legislature were to provide that the insertion of the matter required to be published in one regular issue of a legal newspaper in any week should be a legal and sufficient publication for that period without regard to whether the paper had one or more than one regular issue during that period.

From the above it becomes apparent that section 25-2228, R. R. S. 1943, supersedes and effectively abrogates

the rule laid down in the two cases heretofore mentioned and cited by the plaintiff, and also section 16-405, R. R. S. 1943, and makes it clear that the publication of the ordinance of the city one time in the daily newspaper was sufficient. The plaintiff's contention is without merit.

The defendants contend that when the plaintiff filed a notice of appeal and deposited the docket fee in the office of the clerk of the district court as required by section 25-1912, R. S. Supp., 1961, this court had jurisdiction of the cause and all parties thereto, and the trial court was divested of such jurisdiction.

We have heretofore set forth the procedure which was taken by the plaintiff to perfect appeal to this court.

In the case of Brasier v. Cribbett, 166 Neb. 145, 88 N. W. 2d 235, this court said: "In Harkness v. Central Nebraska Public Power & Irr. Dist. (154 Neb. 463, 48 N. W. 2d 385), *supra*, the court went on to say: 'The general rule as stated by text writers is that a pending motion for a new trial seasonably filed keeps the cause in the trial court and so long as it remains undisposed of there can be no final judgment within the meaning of the statutes regulating appeals. As soon as a motion for a new trial is filed the district court's jurisdiction over the case is retained and continued. During the pendency of a motion for a new trial no appealable order is considered as having been rendered until the motion for a new trial is disposed of.' "

The rule is the same in an equity case wherein a motion for new trial is filed as in an action at law. We find no error in the plaintiff perfecting an appeal to this court on the overruling of the motion for new trial.

The ordinance in this case is designated as ordinance No. 3875. It provides in part as follows: "An Ordinance to prohibit on Sunday, or in lieu thereof, the seventh day of the week, the opening of any store, shop or place of business for the purpose of selling, or offering or exhibiting for sale, or the engaging in the business of selling or offering for sale, goods, wares or merchan-

dise, foods, flowers, trees or shrubs; to provide certain exclusions; to provide for construing of provisions of this ordinance; to provide a severability clause; to declare unlawful selling on Sunday to be a nuisance; to provide for injunction, and to fix penalties for the violation of the provisions of this ordinance.

"BE IT ORDAINED BY THE MAYOR AND COUNCIL OF THE CITY OF GRAND ISLAND, NEBRASKA:

"SECTION 1. It is hereby declared by the Mayor and City Council that the intent and purpose of this ordinance is to promote the health and welfare of the people of the City of Grand Island, by establishing a common day of rest and recreation, and to designate and declare as public policy the first day of the week, commonly called Sunday, as the common day of rest and recreation for the residents of the City of Grand Island.

"SECTION 2. The word 'person' as used in this ordinance shall be construed to include any natural person, partnership, club, association or corporation. * * *

"SECTION 3. It shall be unlawful for any person or persons within the corporate limits of the City of Grand Island on the first day of the week, commonly called Sunday, to open any store, shop or other place of business for the purpose of selling or offering, or exhibiting for sale, or to engage in the business of selling, or offering for sale, therein or elsewhere, goods, wares or merchandise of whatsoever nature, or foods, flowers, trees, or shrubs, except: (1) Gasoline, oil, greases and other maintenance items used in servicing motor vehicles, boats, and aircraft; (2) Newspapers, books and periodicals, and radio and television broadcasts; (3) Beverages and refreshments; (4) Tobaccos, cigars and cigarettes; (5) Candies and confections; (6) Drugs and medicines, hygienic and sick room supplies; (7) Travel tickets, fares and trip insurance; (8) Postage, telegrams, cablegrams, telephone or other public utilities' commodities; (9) Admissions to, and fees charged at places of amusement, entertainment and recreation; (10) Meals prepared and

served for immediate consumption; (11) Natural and Artificial Ice. Provided, however, that nothing herein contained shall extend to those who conscientiously observe the seventh day of the week as the Sabbath, and in pursuance of such observance shall close and keep closed their store, shop or other place of business on the seventh day of the week, commonly known as Saturday; Nor is the same to be construed to prohibit (1) trade show or other like exhibitions held at hotels, fair grounds, auditoriums, or coliseums for the purpose of selling, offering, or exhibiting for sale, goods, wares or merchandise by wholesale distributors to retail establishments for the purpose of resale. * * *

"SECTION 6. It is hereby declared that the sale of any articles on Sunday prohibited by this ordinance, unless Saturday is conscientiously observed, shall be, and is declared to be a public nuisance, and any store or other establishment wherein such sales or offers of sales are made in violation of this ordinance is hereby declared to be a public nuisance, and any citizen of this City may enjoin said nuisance in the District Court of this district. The issuance of an injunction shall not relieve a person from criminal prosecution for violation of the provisions of this ordinance, but such remedy of injunction shall be in addition to liability to criminal prosecution.

"SECTION 7. Every person, association or corporation who shall violate this ordinance shall be guilty of a misdemeanor, and shall upon conviction thereof, for a first offense be fined a sum of not less than Twenty Five Dollars ($25.00), nor more than Fifty Dollars ($50.00), and for any subsequent offense shall be fined not less than Fifty Dollars ($50.00), nor more than One Hundred Dollars ($100.00). Each day on which the sale of a prohibited item is made, shall be deemed to constitute a separate offense.

"SECTION 8. This ordinance shall be in force and

take effect from and after its passage, approval and publication as provided by law.

"Passed and approved by a majority vote of the members of the City Council, this 3rd day of October, 1962."

The record discloses that the plaintiff operates a general, everyday, department store within the city limits; that the store has been in operation since October 1959; and that it is open from 9 a.m., seven days a week, until 9 p.m., except Sunday when it closes at 7 p.m. This store carries a general line of merchandise sold by an ordinary department store and grocery store, such as clothing, food which includes candy, nonalcoholic beverages, nonprescriptive drugs, sickroom supplies, newspapers, books, periodicals, oil, grease and other motor vehicle maintenance items, and tobacco products.

On Sunday, October 14, 1962, the chief of police of the city arrested the manager of the plaintiff for violating the city ordinance by selling to a customer a loaf of bread and a pair of gloves, and summoned him to appear in the police court of the city to answer the violation of the ordinance. The city officials stated that they intended to enforce the ordinance against the plaintiff unless restrained from doing so.

The manager testified on cross-examination that the store had 97 employees, 35 to 40 of which worked on Sunday; that the plaintiff had part-time and full-time employees, most of whom work a 42-hour week; and that at most, 900 cars are parked in the parking lot of the plaintiff's store on Sunday at one time, and probably 100 cars that could not get into the parking lot were parked in the street.

. The Grand Island Baking Company operates two bakeries within the city, sells bakery products wholesale and retail, and operates four retail outlets from which it sells bakery products and dairy products. In addition, it operates a restaurant grill at one of the four retail outlets. One of the bakeries, all four of the retail outlets, and the restaurant grill are operated on Sunday and have

been for many years. The Sunday retail business produces $1,200 to $1,500 in sales, and Sunday is one of
the company's better business days. The manager of
the main bakery outlet was arrested on October 14, 1962,
for selling bakery and dairy products in violation of the
ordinance.

James W. Bost testified that he operated the Bost
Pharmacy and had operated it in its present location
since the latter part of April 1960. He is a registered
pharmacist. He further testified that the store is a
general drugstore wherein prescriptions are filled and
such items as toiletries, drugs, sundries, miscellaneous
items such as tobacco products, flashlights, greeting cards,
toys, and gift items are sold. The store also operates a
soda fountain. This witness further testified that
Sunday sales were from 150 to 165 percent better than
weekday sales. On Sunday, October 21, 1962, he was
arrested for selling a child's toy and a greeting card in
violation of the ordinance.

Mr. Crow, who operated and owned the Top Hat TV
store, testified that he had operated this business since
1955. The business consists of the sale of various items
of furniture, television sets, sewing machines, washing
machines, refrigerators, home freezers, air conditioners,
and other appliances, and the servicing of such appliances, together with the sale of any parts and supplies
required in servicing work. He further testified that he
had kept his place of business open on Sunday since
1955, for the sale and servicing of merchandise; that
during the 12 months of 1961, this business made in
excess of $17,000 in sales of appliances on Sundays; and
that during the first 9 months of 1962, made in excess
of $20,500 in appliance sales on Sunday. He was arrested on Sunday, October 21, 1962, for selling merchandise in violation of the ordinance.

The business of the plaintiff on Sunday constitutes the
third largest selling day in a normal week. The overhead on Sunday is the same as other days, except that

on Sunday the plaintiff has been paying its employees time and a half.

The pertinent assignments of error contended for by the plaintiff are as follows: The trial court erred in holding that the ordinance was constitutional as against the various grounds of unconstitutionality raised by the plaintiff, namely, unreasonable classification of businesses and commodities granting special privileges and immunities to one class not granted to another; and that the ordinance is unreasonably discriminatory.

The following applies to the city in the instant case. It does have the police power to enact a Sunday closing ordinance, as shown in the case of Arrigo v. City of Lincoln, 154 Neb. 537, 48 N. W. 2d 643. This case also bears on other matters pertinent to a determination of this appeal. This court said: "A municipal corporation by virtue of its police power may legislate reasonably with respect to Sunday observance within its corporate limits, and such an ordinance is valid if it does not violate any constitutional guarantee or does not conflict with the general laws of the state. The prohibition of specified acts on Sunday is for the promotion of health, peace, and good order of society by requiring persons to have a periodical day of rest and is generally sustained on the ground that it is within the domain of the police power. Such a regulation is essentially civil and not religious. Stewart Motor Co. v. City of Omaha, 120 Neb. 776, 235 N. W. 332; State v. Somberg, 113 Neb. 761, 204 N. W. 788; Liberman v. State, 26 Neb. 464, 42 N. W. 419, 18 Am. S. R. 791; Ernesti v. City of Grand Island, 125 Neb. 688, 251 N. W. 899; * * * 50 Am. Jur., Sundays and Holidays, § 7, p. 805, § 10, p. 809.

"An ordinance of the character of the one involved in this case must be based upon a classification which is not unreasonable or arbitrary. It cannot be class legislation. The demand of the organic law is that all similarly situated must be included and none may be excluded whose relationship to the subject matter can-

not by reason be distinguished from that of those included. There is a legal presumption in favor of the reasonableness of a city ordinance unless the contrary inheres therein or is shown by evidence. It is competent for a city by ordinance to make a classification, but to be valid it must rest upon some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified. A city ordinance to meet constitutional requirements must respond to the same tests as are required of statutory enactments. Webber v. City of Scottsbluff, 141 Neb. 363, 3 N. W. 2d 635."

The ordinance in question in the above case required the closing of business houses generally, including grocery stores and meat markets; prohibited the sale of groceries and articles ordinarily sold in a grocery store, and meats and other products ordinarily sold in meat markets, from such stores; but permitted other business houses to be open on Sunday for necessary purposes and to sell fresh fruits, ice, bread, and milk, even though such food items were products ordinarily sold in a grocery store or meat market. This court said: "The effect and result of these provisions are that the places of business excepted from the ordinance may be open on Sunday and may transact with the public business 'for necessary purposes,' and any or all of them may on Sunday without restriction sell as they do on any other day 'fresh fruits, ice, bread and milk.' The privileges and rights conceded to them are denied to grocery stores and meat markets. The places of business exempted and grocery stores and meat markets are shown by the record in competition in areas conceded to the former and prohibited to the latter. The businesses favored by the ordinance affect the permissible subject matter of this legislation in very much, if not in identically, the same way as the business activities of appellants. The keeping open and operation of each requires like atten-

tion and efforts, and each furnish to the public in many instances similar or identical items of merchandise. Reason cannot explain how the health, peace, and good order of society is promoted by permitting the sale on Sunday of articles and items usual to a cigar store 'for necessary purposes' and by prohibiting the sale thereof on Sunday upon the same qualification by and in grocery stores. It is unreasonable and arbitrary to allow the unrestricted sale on Sunday by fruit stores and the other exempted places of 'fresh fruits, ice, bread and milk' and to deny this privilege and right to grocery stores or meat markets. There is no reason that justifies the regulation of grocery stores and meat markets in this regard which does not apply in equal force to the businesses exempted from the ordinance. They are, within the showing made in this case, similarly situated with reference to the permissible subject matter sought to be dealt with by the ordinance. Legislation involving similar improper classification has been condemned by this court."

In considering the ordinance in the instant case it is noted that it only proscribes some retail and wholesale business activities which sell any commodities coming within the eleven general categories of commodity exceptions, and those retail and wholesale businesses which conscientiously observe Saturday as their Sabbath, and those wholesale businesses (but not retail businesses) which sell through a trade show or other like exhibitions are exempted from the provisions of the ordinance and permitted to engage in business on Sunday.

The record discloses that many retail businesses that are permitted by the ordinance to continue to sell commodities on Sunday are in competition with the plaintiff's general department and grocery store, the Bost Pharmacy, the Top Hat TV appliance and service store, and the Grand Island Baking Company retail stores in the commodities that are sold. The record shows that many filling stations within the city limits, which are

allowed to remain open on Sunday, offer for sale on such day various items prohibited under the terms of the ordinance, such as flashlight batteries, sunglasses, charcoal lighter fuel, dinnerware sets, toy firetrucks, and scotch tape. At a bus depot there are offered for sale camera films, balloons, various types of toys, fountain pens, ballpoint pencils, toilet soap, pocket knives, shampoos, hairnets, playing cards, razors, razor blades, and combs. There is also a hotel within the city limits where there are offered for sale a variety of curios, ashtrays, belts, and pennants. There is also a filling station which offers some of the items mentioned above, and also fertilizer. Another filling station carries some of the items offered for sale above, and in addition shaving cream, nail clippers, and other items which are prohibited by the ordinance and which are sold by retail businesses permitted to be open on Sunday.

A great part of the business activity in the city on Sunday in terms of employees employed and business transacted is not prohibited by the ordinance, such as manufacturing, warehousing, transportation, building and highway construction, all types of personal and professional service businesses such as laundries and dry cleaning establishments, and all types of mechanical and artisan labor.

Businesses observing Saturday as their Sabbath are required to stay closed on Saturday and are not permitted to sell the excepted goods and merchandise on Saturday while every other business covered by the ordinance may at least sell the excepted goods on Sunday, as shown in the ordinance.

It is obvious that classifications have been set up by the city council in the enactment of this ordinance and that discrimination has been exercised in the establishment of such classifications. In one class are businesses which sell commodities as compared to a class of businesses which do not sell commodities but manufacture, warehouse, transport, or perform services on or with re-

spect to such commodities. A second classification exists, with one class established being businesses which sell the proscribed commodities, as compared to businesses which sell the excepted and therefore permitted commodities.

In the case of Gronlund v. Salt Lake City, 113 Utah 284, 194 P. 2d 464, which we deem applicable to the instant case, the court considered a closing of business on Sunday ordinance which provided: "It shall be unlawful for any person to offer or expose for sale, or sell in or from a place of business located in Salt Lake City, any commodity upon the first day of the week, commonly called Sunday; excepting that foods may be sold to be eaten on the premises where sold; fruits and vegetables sold by the producer on the premises where produced; and drugs, medicines, surgical appliances; fresh milk; ice cream and soda fountain dispensations; candy and confections; bottled soft drinks; bread and bakery products; ice; gasoline and oil; tobacco and cigars; dentifrices and toiletries; newspapers and magazines; sporting equipment (but not including sports clothing); beer; nursery products, such as trees, shrubs, flowers, plants, and bedding plants; and parts and equipment for automobiles and other vehicles which are necessary to be installed for repair purposes on Sunday, may be sold."

The analysis of the discrimination issues made by the Utah Supreme Court is worthy of consideration. The court said: "Such being the case, the narrower question confronts us: Is the ordinance of Salt Lake City adapted to accomplish the objects or some of them for the accomplishment of which the power is granted, or is it rather an arbitrary exercise of the assumed grant of power and hence not within the intendment of the legislative grant of power and therefore violative of constitutional guarantees against unreasonable discrimination?

"In seeking the answer to the question thus stated, it may be helpful here to reassert certain guiding con-

cepts voiced by this court in Broadbent v. Gibson (105 Utah 53, 140 P. 2d 939), *supra*. In determining constitutionality, statutes are presumed to be constitutional until the contrary is clearly shown. The constitutionality of general Sunday closing laws is no longer to be doubted. The purpose of such statutes is to protect society by establishing a compulsory day of rest. In determining whether or not a classification made by a legislative body is unconstitutional it must be remembered that discrimination is the very essence of classification and is not objectionable unless founded upon distinctions which the court is compelled to find unreasonable. In 12 Am. Jur., p. 217, sec. 521, the following rule is enunciated: 'Before a court can interfere with the legislative judgment it must be able to say that there is no fair reason for the law that would not require with equal force its extension to others which it leaves untouched.'

"In State v. Mason, 94 Utah 501, at page 508, 78 P. 2d 920, 923, 117 A. L. R. 330, we stated: 'In order to see whether the excluded classes or transactions are on a different basis than those included, we must look to the purpose of the act. The objects and purposes of a law present the touchstone for determining proper and improper classifications.'

"With these criteria in mind, we address ourselves to the provisions of the ordinance. First to be noted is that it is not a general Sunday closing law in the sense that it prohibits the performance of labor and the pursuit of gainful occupation—works of charity and necessity excepted—on Sunday. It has reference only to mercantile pursuits, indirectly limiting those pursuits by preventing the sale on that day of all commodities with specified exceptions. Nothing in the ordinance prohibits manufacturing, transportation, personal service, warehousing, or the pursuits of the mechanics and the artisans. Building contractors and the artisans employed by them may carry on Sunday work. Banks, pawn shops,

laundries, and cleaning establishments, automobile and appliance repair shops, barber shops and beauty parlors, to mention but a few of the commercial activities which it is common knowledge are carried on within the corporate limits of Salt Lake City, may operate in the usual manner on Sunday.

"Whether the purpose of the ordinance in question be conformable to the original purpose of such acts, to protect religious observance of the Sabbath or that of the protection of society by establishing a compulsory day of rest, it is not clear why the prohibition of the sale of commodities is in furtherance of such purpose or object and the prohibition of the various permitted commercial activities is not. It is difficult to conceive why it is promotive of the health, safety, morals, peace, good order, comfort and convenience of the inhabitants of Salt Lake City to prohibit in effect the working of a salesman or saleswoman on Sunday, while permitting the employment of common laborers, artisans, stenographers and laundresses. * * *

"The principal attack upon the ordinance in question * * * is directed at the exceptions in the enactment from the general prohibition against sale and offering for sale of commodities on Sunday. In view of what we have said hereinabove as to the ordinance not being a general Sunday closing law designed to accomplish the purposes it purports to effect, we shall devote little space to the argument made as to discrimination between the sale of commodities. Even bearing in mind the rule that the classification upon which a Sunday closing law is based is within the discretion of the legislative branch and hence will be upheld unless clearly arbitrary, it is difficult to conceive of a fair reason for some of the items excepted. It is readily apparent that some of the exceptions are clearly based on necessity. But as to others, even considering the desirability of promoting recreational activity on Sunday, no fair reason suggests itself as to why their sale should be permitted on Sunday

while the sale of other commodities is prohibited. Neither sporting equipment nor nursery products are such from the standpoint of the buyer or seller that they cannot be purchased on a week day, though it is the intention of the buyer to use the equipment and plant the tree or flowers on a Sunday. Neither is likely to deteriorate over Saturday night or be depleted during Sunday. Boxing gloves and baseball bats are at least as staple as butter and bananas. The same may be said of dentifrices and toiletries, tobacco and beer. The classification being on a commodity basis, it is arbitrary to permit the sale of a can of beer on Sunday and prohibit the sale of a can of orange juice or a can of coffee."

In Ernesti v. City of Grand Island, 125 Neb. 688, 251 N. W. 899, quoting from State v. Farmers & Merchants Irr. Co., 59 Neb. 1, 80 N. W. 52, the court said: " 'The rule established by the authorities is that while it is competent for the legislature to classify, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified. See Cooley, Constitutional Limitations (5th ed.) 481.' " See, also, City of Mt. Vernon v. Julian, 369 Ill. 447, 17 N. E. 2d 52, 119 A. L. R. 747; Pacesetter Homes, Inc. v. Village of South Holland, 18 Ill. 2d 247, 163 N. E. 2d 464.

In Pacesetter Homes, Inc. v. Village of South Holland, *supra,* the court held in effect that a city ordinance providing for Sunday closing cannot prohibit that which is harmless in itself, or require that to be done which does not tend to promote the health, comfort, safety, or welfare of society; and that a business or occupation which has no tendency to affect or endanger the public in connection with health, safety, morals, or general welfare is not within the police power.

In City of Mt. Vernon v. Julian, *supra,* the court held that exceptions to a general Sunday closing ordinance

must, if the ordinance is to be valid, bear some relation to the public health, safety, morals, or general welfare.

We conclude, from a review of the ordinance and the authorities applicable thereto, that such unequal and unfair treatment of businesses and persons employed by such businesses is patently unreasonable, arbitrary, and discriminatory, and violates the constitutional provisions contained in the Fourteenth Amendment to the United States Constitution, and Article I, sections 1 and 3, of the Constitution of the State of Nebraska.

The Fourteenth Amendment to the Constitution of the United States is in part as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Article I, section 1, of the Constitution of the State of Nebraska, refers to equal rights, and provides: "All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty and the pursuit of happiness. To secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed."

Article I, section 3, of the Constitution of the State of Nebraska, provides: "No person shall be deprived of life, liberty, or property, without due process of law."

Reason cannot explain how the sale of a loaf of bread, a pair of gloves, a child's toy, or a greeting card on Sunday affects the health, peace, and good order of society.

In the light of the evidence adduced and the authorities heretofore cited, we conclude that the judgment of the trial court should be reversed and the cause remanded with directions to render judgment declaring the ordinance void and of no effect, in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.