TERRY CARPENTER, INC., A CORPORATION, APPELLEE, V. DONALD L. WOOD ET AL., APPELLANTS.

129 N. W. 2d 475

Filed July 3, 1964. No. 35687.

Donald L. Wood and Marvin L. Holscher, for appellants.

Lyman & Winner, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action filed in the district court for Scotts Bluff County by Terry Carpenter, Inc., a corporation, hereinafter referred to as plaintiff, to declare Legislative Bill 710 void and unconstitutional, and for an injunction permanently enjoining the defendants, Donald L. Wood, county attorney, and Steve Warrick, Jr., sheriff of Scotts Bluff County, hereinafter referred to as defendants, from enforcing its provisions against the plaintiff. The

trial court held the statute to be unconstitutional and void, and the defendants have perfected an appeal to this court.

Legislative Bill 710, popularly described as "A Sunday closing law," and hereinafter referred to as L. B. 710, was enacted by the Seventy-third Session of the Legislature of the State of Nebraska. Laws 1963, c. 392, p. 1242; §§ 69-901 to 69-908, R. S. Supp., 1963.

To understand the provisions discussed hereinafter, we set out the first five sections of the act, which are as follows:

"Section 1. It is hereby declared that the intent and purpose of this act is to promote the health and welfare of the people of the State of Nebraska by establishing a common day of rest and recreation for the people of the State of Nebraska.

"Sec. 2. As used in this act unless the context otherwise requires:

"(1) Person shall be construed to include any natural person, partnership, club, association, or corporation; and

"(2) Sale and selling shall be limited to sales at retail to the ultimate consumer and shall be construed to include renting where ultimate sale is contemplated.

"Sec. 3. It shall be unlawful for any person to engage in, or to employ others to engage in, the business of selling or offering for sale the following commodities on the first day of the week, commonly known as Sunday: Clothing and wearing apparel; clothing accessories; housewares, household equipment, and supplies; home, business, or office furniture and furnishings; household, personal, business, or office appliances; hardware, tools, and paints; food for consumption away from the premises where sold, except as provided in section 4 of this act; building and lumber supply materials, jewelry, silverware, watches, and clocks; luggage and leather goods; musical instruments and recordings; toys, radios and television sets, receivers, record players, re-

cording devices, and components and parts therefor; sporting and recreational equipment, accessories and supplies, except where sold on the premises where they are to be used; cameras, projectors, and parts and equipment therefor, except film, flash bulbs and batteries; business and office machines; optical goods, except sun glasses; yard goods, trimmings, and sewing supplies; and pet supplies and equipment.

"Sec. 4. Nothing in this act shall be construed to prohibit the sale of:

"(1) Any goods for charitable or government purposes; nor the sale of any goods not enumerated in section 3 of this act; or

"(2) Drugs, medicines, medicinal and surgical supplies and appliances; sickroom supplies and sanitary goods; milk and dairy products; bakery products; fresh fruits and vegetables where sold on the premises on which grown; food prepared for immediate consumption; ice, ice cream, ices, confectionaries and beverages; newspapers, periodicals and books and pamphlets; tobacco products and smokers' supplies; gasoline, motor fuels, fuel additives, lubricants, anti-freeze and emergency repair and replacement parts for immediate installation on motor vehicles, farm equipment, boats, and aircraft, including tires, batteries and accessories for immediate and emergency installation; emergency plumbing, heating, cooling and electrical repair and replacement parts if installed by a person regularly engaged in that trade or business; cooking, heating, and lighting fuel; electricity, water and steam; bait; ammunition; athletic, sporting and recreational equipment, accessories and supplies if sold on the premises where they are to be used; funeral and burial supplies; feeding and sanitary supplies for infants; stationery and writing supplies; cosmetics, toiletries and shaving and grooming supplies, except power operated devices; articles customarily sold as souvenirs and momentos; and post cards.

"Nothing in this act shall be construed to prohibit the

sale, or offering for sale, on Sunday of any of the items listed in section 3 of this act, as part of any bona fide trade show, fair, or exhibition sponsored by or for the benefit of any nonprofit trade, labor, industry, or governmental organization or body, or where sold in or from any place of business in this state employing not more than two persons, including the proprietor and a third part-time employee not working more than five days per week, on Sunday and throughout the week. For the purpose of this section, place of business shall mean a business under one management, and shall include all lessees and sublessees.

"Sec. 5. Nothing in this act shall extend to those who conscientiously observe the seventh day of the week as the Sabbath and in pursuance of such observance shall close and keep closed their store, shop or other place of business on the seventh day of the week, commonly known as Saturday."

Plaintiff is a Nebraska corporation maintaining a retail store in the village of Terrytown, Scotts Bluff County. It remains open 7 days a week, selling at retail groceries; food stuffs, both perishable and nonperishable, including beverages; hardware; paints; clothing; items commonly found in a variety store; wearing apparel; tools; food for consumption away from the premises where sold; building supplies and materials; jewelry; clocks; luggage and leather goods; records; toys; radios; cameras; and sporting goods. More than 10 percent of its earnings result from Sunday sales.

On Sunday, October 20, 1963, plaintiff, through its employees, sold one of its customers a can of paint, a toy, two cans of vegetables, one pair of hose, and one can opener. On October 21, 1963, the defendant Wood filed a complaint in the district court, charging the plaintiff with unlawfully engaging in the business of selling the above-enumerated commodities on Sunday, contrary to the statutes of Nebraska. Pursuant thereto, the defendant Warrick served the arrest warrant upon the

plaintiff. The defendants stated their intention to continue to arrest the plaintiff or any of its employees or officers who sold commodities prohibited for Sunday sale by L. B. 710. Plaintiff then commenced the instant action.

The only question presented by this appeal is whether L. B. 710 is constitutional. In construing an act of the Legislature, all reasonable doubt must be resolved in favor of constitutionality, and if a statute is subject to more than one construction, the court will adopt the one which will make the act constitutional. Anderson v. Carlson, 171 Neb. 741, 107 N. W. 2d 535, 83 A. L. R. 2d 831.

While the defendants allude to the fact that the plaintiff contends L. B. 710 is violative of the First Amendment to the Constitution of the United States, plaintiff does not predicate its attack on this provision. It concedes that proper civil or secular regulations prohibiting Sunday activities are within the power of the Legislature to enact, and treat L. B. 710 as purely a secular regulation directed entirely toward mercantile pursuits. It predicates its attack on the violation of Article I, sections 1 and 3, Constitution of Nebraska, and on the violation of the Fourteenth Amendment to the Constitution of the United States.

Article I, section 1, Constitution of Nebraska, refers to equal rights, and provides: "All persons are by nature free and independent, and have certain inherent and inalienable rights; among these are life, liberty and the pursuit of happiness. To secure these rights, and the protection of property, governments are instituted among people, deriving their just powers from the consent of the governed."

Article I, section 3, Constitution of Nebraska, provides: "No person shall be deprived of life, liberty, or property, without due process of law."

The Fourteenth Amendment to the Constitution of the United States in part provides: "No state shall

make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

Acts such as L. B. 710 are usually the result of the conflict between economic pressures for 7-day commercial activity and the resistance to those pressures. We are not here concerned with the motivations for the act. That is the legislative function. Our concern is directed toward the legality of the various classifications embraced within the act.

An examination of the provisions of L. B. 710 set out above makes it obvious that it is not a general Sunday closing statute, in the sense that it prohibits the performance of labor or the pursuit of most gainful occupations. It is strictly limited to certain specific sales at retail to the ultimate consumer, and in section 4, permits the sale of some of those same commodities if used on the premises where purchased. It does not apply to artisans, people engaged in manufacturing, warehousing, transportation, construction work, service stations, or to laundries, cleaning establishments, repair shops, barber shops, beauty parlors, or any type of personal or professional pursuit. Further, it specifically exempts retail establishments employing not more than two people.

The announced intent of the act in section 1 is to promote the health and welfare of the people of Nebraska by establishing a common day of rest and recreation for the people of the State of Nebraska. The announced purpose is laudable and clearly within the power of the Legislature. Experience has demonstrated a close relationship between secular Sunday prohibitive acts and the interest of the state in preserving to its people a regular or recurrent time of mental and physical recuperation from the strains and pressures of their ordinary

tasks. Such statutes have been our heritage since colonial times. Probably some type of Sunday prohibitory law has been adopted in every state in the union. We have held that a prohibition of activities on Sunday for the promotion of health, peace, and good order of society by requiring a periodic day of rest is sustainable on the ground that it is within the domain of the police power. See Skag-Way Department Stores, Inc. v. City of Grand Island, 176 Neb. 169, 125 N. W. 2d 529. The problem arises with L. B. 710 as to why, if the announced purpose is the true intent of the act, it is so restrictive in its operation.

In Ernesti v. City of Grand Island, 125 Neb. 688, 251 N. W. 899, discussing the power of the Legislature to classify, we said: " 'The rule established by the authorities is that while it is competent for the legislature to classify, the classification, to be valid, must rest on some reason of public policy, some substantial difference of situation or circumstances, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects classified. See Cooley, Constitutional Limitations, (5th ed.) 481.' "

We appreciate that exact conformity or absolute harmony and symmetry between groups, while desirable, are not always attainable. The provisions of the federal Constitution are met if a legislature responds to the practical everyday facts with which it deals. See McGowan v. Maryland, 366 U. S. 420, 81 S. Ct. 1101, 6 L. Ed. 2d 393.

The question we must determine herein is whether the classifications embraced within L. B. 710 bear some reasonable relation to the promotion of health, peace, and the good order of society, and are based upon reasonable distinctions affecting all persons similarly situated or engaged in the same type of business without discrimination. Classification within a legislative act must rest on real differences among members of the class, and this

classification must bear reasonable relationship to the purposes of the legislation.

In Skag-Way Department Stores, Inc. v. City of Grand Island, 176 Neb. 169, 125 N. W. 2d 529, at page 185, we quoted the following from State v. Mason, 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330: " 'In order to see whether the excluded classes or transactions are on a different basis than those included, we must look to the purpose of the act. The objects and purposes of a law present the touchstone for determining proper and improper classifications.' "

An examination of the act indicates it embodies a partial commodity approach as well as a restricted retail sales approach to accomplish its declared purpose. Without discussing the commodities enumerated, some of the permitted sales may be classed as emergency supplies or necessities, but only a very few. Excluding these, we observe that the sale of food for consumption away from the premises where sold is prohibited, but the sale of fresh fruits and vegetables where sold on the premises where grown; the sale of milk, dairy products, bakery products, ice cream, ices, confectionaries, beverages, tobacco products, and smoking supplies are permitted. It is illegal to sell orange juice or a can of coffee on Sunday, but permissible to sell a can of beer. It is illegal to sell a pound of hamburger or a dozen weiners, yet permissible to sell the buns or bread with which they would be used. It is illegal for a retailer with more than two employees to sell a bushel of apples or other fruit or a bushel of potatoes or other vegetables on Sunday, but permissible for anyone to operate a roadside stand with any number of employees so long as it is done on premises where the products are grown.

Some of the exceptions appear to be based on the promotion of recreational activities on Sunday. Yet no fair reason suggests itself as to why their sale should be permitted on Sunday while the sale of other commodities is prohibited. Nor can we understand why the

seller of recreational equipment on the premises where it is to be used, and where the demand may be the greatest, should be preferred over the retailer who maintains an establishment where the costs of operation may be much greater. There are other observations which may be made on the commodity approach herein, but these suffice. Reason cannot explain how the promotion of the declared purpose of the act is justified by the discrimination inherent in this approach.

Defendants argue we have approved equally discriminatory enactments in the past, citing City of Omaha v. Lewis & Smith Drug Co., Inc., 156 Neb. 650, 57 N. W. 2d 269, and Stewart Motor Co. v. City of Omaha, 120 Neb. 776, 235 N. W. 332. We do not so construe those cases. It is obvious that the commodity classifications in L. B. 710 are such that we must hold them to be arbitrary and discriminatory.

In Skag-Way Department Stores, Inc., v. City of Grand Island, 176 Neb. 169, 125 N. W. 2d 529, we quoted the following from State v. Mason, *supra*, which is applicable herein: " 'Whether the purpose of the ordinance in question be conformable to the original purpose of such acts, to protect religious observance of the Sabbath or that of the protection of society by establishing a compulsory day of rest, it is not clear why the prohibition of the sale of commodities is in furtherance of such purpose or object and the prohibition of the various permitted commercial activities is not.' "

With respect to the exempted retailers, the discrimination is even more obvious. If the purpose of the act is to promote the health and welfare of the people of the State of Nebraska, why should two-employee retailers be exempt? For that matter, why should everyone but retailers be exempt? Why should L. B. 710 single out one small segment of our business world, the retailer with more than two employees, if the purpose to be accomplished is the one declared? Why should

trade shows sponsored by labor or industry be permitted to sell prohibited commodities on Sunday?

The effect of this act is to close retail establishments with more than two employees on Sunday, and by so doing to force the general public to patronize two-employee establishments, which are favored by the act. So far as the general public is concerned, there will be no change in buying habits, merely a little inconvenience. The public may still shop on Sunday. It can still buy the same articles it has always bought on that day. The only difference is that in some instances it will be necessary to trade at different establishments than those patronized in the past. How this can promote the declared purpose of L. B. 710 is in the realm of speculative conjecture. We are unable to perceive how it can possibly be promotive of the health and welfare of the people of the State of Nebraska to prohibit the operation of retail outlets having more than two employees from Sunday activity while permitting those with two employees to operate as well as permitting the Sunday employment of the rest of the population. This is an arbitrary, discriminatory classification which questions the declared purpose of the act.

L. B. 710 also requires businesses observing Saturday as the Sabbath to close and to keep closed on Saturday if they wish to open on Sunday. The discrimination appears when we realize that Saturday Sabbatarians are not permitted to sell the excepted articles and commodities on Saturday, while all other businesses covered by the act may sell the excepted goods on Sunday. The discrimination is so obvious it requires no further discussion.

Defendants urge that L. B. 710 contains a severability provision and that even though a portion of the act should be held invalid, the rest of the act should be sustained with the invalid provisions deleted. The provision in question, which is section 9, provides: "If any word, clause, sentence, paragraph, or part of this act

shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid, ineffective, or unconstitutional either by itself or in its application to a particular person or activity, such judgment shall not affect, impair, or invalidate the remainder of this act but shall be confined in its operation to the word, clause, sentence, paragraph, or part thereof, directly involved in the controversy in which judgment has been rendered, and the remaining provisions of this act shall remain in full force and effect."

A declaration of severability in a legislative act is a declaration of the intent of the Legislature that it would have passed the act with the invalid parts omitted. State ex rel. Meyer v. County of Lancaster, 173 Neb. 195, 113 N. W. 2d 63. When a legislative enactment in which such a declaration appears contains valid and void provisions, the valid provisions will be upheld if it is a complete law in itself, capable of enforcement and is not dependent upon that which is invalid; or, stated another way, when the invalid portions of the act are so interwoven with the rest that the act may not be operative with the void portions eliminated or where it is obvious from an inspection of the act that the invalid portion formed the inducement for the passage of the act, the whole act fails.

Applying these tests to L. B. 710, it is obvious that the eliminaton of the invalid portions of the act destroys the act, because those portions are so interwoven with the rest that the act cannot be operative without them.

We hold that L. B. 710 is discriminatory, arbitrary, and unreasonable, and denies the plaintiff the equal protection of the law and deprives it of its property without due process of law, all in violation of its rights under the Constitution of the State of Nebraska and the Fourteenth Amendment to the Constitution of the United States.

For the reasons given, the judgment of the trial court

declaring L. B. 710 to be null, void, and unconstitutional, is affirmed.

AFFIRMED.

CARTER, J., concurring.

This court in the past has sustained Sunday closing laws as a proper exercise of the police power. Arrigo v. City of Lincoln, 154 Neb. 537, 48 N. W. 2d 643; Stewart Motor Co. v. City of Omaha, 120 Neb. 776, 235 N. W. 332; City of Omaha v. Lewis & Smith Drug Co., Inc., 156 Neb. 650, 57 N. W. 2d 269. In Skag-Way Department Stores, Inc. v. City of Grand Island, 176 Neb. 169, 125 N. W. 2d 529, and in the instant case, we have indicated the propriety of Sunday closing laws, but held them unconstitutional on the ground of a want of uniformity because of unreasonable classification. The question immediately arises as to whether or not a valid Sunday closing law can be drawn to meet the requirements of uniform classification. This, I think, requires a reexamination of our previous holdings.

The early cases in this country sustained Blue Laws providing for Sunday closing on the ground that it was within the police power to provide for a day of religious worship in that it promoted the health, peace, and good order of society. But underlying all attempts to enact Sunday closing laws under the police power, Sunday as a day of rest for closing is designated even though a day of rest could well be any day in the week. The modern trend in the cases is to the effect that laws requiring closing on Sunday as a day for religious worship are contrary to the First Amendment to the Constitution of the United States prohibiting any law respecting an establishment of religion, or prohibiting the free exercise thereof. Inherent in these holdings is the fact that many religious groups do not observe Sunday as a day for religious worship. This has resulted in the making of exceptions in Sunday closing laws for members of these groups to close on days other than Sunday and compensation for their economic loss by being

permitted to remain open on Sunday. It represents an attempt to use the police power of the state to enforce a religious holiday and provide by law one day each week for religious worship. It is now generally recognized that this approach cannot be sustained under the police power.

It is most difficult to accept the logic that Sunday closing laws have any relation to public safety, health, morals, or welfare. At least it is difficult to see why Sunday is different than any other day as it relates to police power regulation. In the Stewart Motor Company case, *supra,* decided in 1931, this court recognized the problem when it said: "If the question were new, we might feel more inclined to draw the lines a little more closely than they have been drawn, * * *."

With the change in judicial decisions which have abandoned the theory that the maintaining of a day of worship, by law, has no legal basis for support, the problem is more complex. Sunday closing laws were then enacted under the police power on the basis of providing a uniform day of rest, excepting from its provisions businesses, occupations, and professions which were necessary to be open on Sunday, and Sabbatarians recognizing days other than Sunday for religious worship. The difficulties with Sabbatarians whose day of religious worship was other than Sunday continued as before. The businesses, occupations, and professions which were necessary to remain open on Sunday provided difficulties in law enforcement in that what is necessary and what is not was extremely difficult of legislative ascertainment.

Legislatures over the country then attempted to solve the matter by the commodity approach. But with the coming of the chain store, and the intermingling of goods in businesses that were formerly engaged in sales of merchandise in one particular line or field, the problem became so complex that the commodity approach was beyond solution. As examples, drug stores sold

groceries, grocery stores sold hardware, and chain stores sold groceries, drugs, garden tools, and most anything else that could be crowded into the place of business. Difficulties arose about remaining open to sell permitted commodities and at the same time being prevented from selling prohibited commodities. Contradictions that were completely ludicrous resulted. Under some laws a store could sell camera film but not a camera; it could sell lipsticks but not a mirror; it could sell comic books but not toys; it could sell a pet bird but not a cage. Untangling the perplexities of such a situation is comparable to untangling a barrel of fishhooks. The commodity approach became confusing, irrational, and inconsistent when measured by the yardstick of uniform classifications.

We are now in a position where we must face the facts that now exist in our more complex social and economic society. The real purpose of Sunday closing laws is not to protect religious worship, or to provide a uniform day of rest, or to provide family unity. Its real purpose is to enlist the power of the state to protect narrow commercial interests, influenced by the fierce competition between the discount store and the downtown merchants. But assuming that a Sunday closing law did forbid all secular activity on Sunday, there is still the question of whether, by law, the state should ever interfere with matters of private conscience.

The time has come, in my opinion, to take a fresh approach to the question of Sunday closing laws. A logical argument can be made that Sunday closing is a matter of conscience and that it is the function of religious organizations to secure voluntary closing on the day of religious worship by persuasion and not by law. The impracticability of classifying by the business or commodity approach is almost insurmountable. Sunday closing laws at their best, when grounded on the police power, are bottomed on a weak legal basis. While I agree with the majority opinion, it does leave the im-

pression, approved by this court, that Sunday closing laws are proper subjects of legislation but, at the same time it strikes down the act on the basis of discriminating classifications, when proper classifications appear to border on the impossible.

I submit that our holding that Sunday closing laws are a proper exercise of the police power is a rather meaningless holding if no way is left open by which the power may be exercised. It is for this reason that I think the court should reexamine its previous decisions in the light of changed conditions. It would appear that if this is not done, the Legislature, in the absence of a new legislative approach, is faced with a hopeless task in drafting a Sunday closing law that will meet constitutional objections.