PAUL BOOKOUT, Plaintiff in Error, v. CITY OF
CHATTANOOGA, Defendant in Error.
—442 S.W.2d 658

Eastern Section. February 20, 1969.

Certiorari Denied by Supreme Court June 2, 1969.

Glenn McColpin, Chattanooga, for plaintiff in error.

Frank Seal and E. K. Meacham, Chattanooga, for defendant in error.

McAMIS, P.J. Plaintiff in error Paul Bookout was convicted in the City Court of Chattanooga of violating an ordinance regulating the sale of certain articles of merchandise on Sunday. On appeal to the Criminal Court of Hamilton County a fine of $50.00 imposed by the City Court was affirmed. Defendant Bookout has appealed and assigned errors.

Section 30-40 of the Code of Ordinances of the City of Chattanooga under which defendant was charged and convicted provides:

"It shall be unlawful for any person, firm or corporation in the City of Chattanooga, Tennessee, owning or operating any clothing, hardware, jewelry, furniture, department or *variety* *store* to sell or authorize another as agent or employee to sell, dispose of or give away on Sunday any article, merchandise, goods, wares or commodities kept for sale in such stores provided, that drug, grocery or milk stores may open on Sundays at 1:00 p.m. and remain open until 6:00 p.m. and provided further that no clothing, hardware, jewelry or furniture shall be sold by said drug, grocery or milk stores on Sundays. Articles displayed other than those hereby permitted

to be sold shall be restricted by appropriate signs indicating that they are not for sale on Sunday." (Italics ours.)

Defendant contended in the Criminal Court, and has contended here, that he was engaged in the business of operating a hobby shop and, since the operation of hobby shops on Sunday is not denounced by the ordinance, his admitted sale of bread and milk at 4:30 A.M. on Sunday, November 26, 1967, does not sustain his conviction.

Defendant owns and operates a corporation chartered under the name "Korner Market, Incorporated." By its charter the corporation is given the right, among others, to engage in the general merchandise business and, specifically, to "engage in the business of a hobby shop".

It is the contention of the City that defendant was engaged in the business of a variety store and that one engaged in that business is forbidden by the ordinance from selling on Sunday "any article, merchandise, goods, wares or commodities kept for sale in such stores".

Since bread and milk are plainly merchandise or goods and admittedly were kept for sale, offered for sale and sold on Sunday we must first determine whether under the proof the business operated by defendant was properly found by the trial court to be a variety store. We think it was.

Defendant testified that in November, 1967, assumed to be a typical month, his total receipts amounted to $60,529.43. The sale of groceries amounted to about ten per cent of the total, or $6,065.40, cheese $305.37, frozen foods $767.76, cold drinks and milk $6,482.30, sandwiches $3,684.93, coffee sold by the cup $3,247.20, prepared foods $13,414.43, meats $6,021.42, produce $1,733.49. Sub-

tracting a total of all the foregoing items from the gross sales of $60,529.43, left a balance of $32,041.38 which defendant describes as "sundries and hobbies".

Defendant introduced a letter from the City Attorney of Chattanooga referring to a list of items prepared by defendant showing what defendant would sell at his store. The list includes numismatic supplies, philatelic supplies, coins, stamps, rocks, souvenirs, tourist items, post cards, newspapers magazines flash bulbs, film, stereo records, sun glasses, car fresheners, pottery, bird baths, cold drinks, coffee, sandwiches, milk, candy, chewing, gum potato chips, nuts, tobacco, lighters and fluids, flower seed, potted plants, fertilizers and dirt and soils. While the record does not actually show that defendant sold all of these items we think it shows in connection with his testimony his intent to conduct a business amounting to much more than a hobby shop.

Defendant testified he carried for sale, in addition to such items as stamps and coins and photographic supplies (properly falling within the classification of hobby supplies) sundries, coffee, sandwiches, potted plants, pots, fertilizer, potting soil, insecticides, charcoal, groceries and ceramics. As above shown, defendant testified that more than half of his gross was from "sundries and hobbies". How much of this was from the sale of "sundries" and how much from hobby supplies does not appear.

A dictionary definition of sundries is: "Sundry things or items, esp. small, miscellaneous items of small value." The Random House Dictionary of the English Language defines variety as the state of being varied or diversified, a number of different types of things, and a variety store as "a retail store, carrying a large variety of

goods, esp. low-priced articles". We think it must be said defendant's use of the term "sundries" carries much the same, if not the identical, connotation.

The police officer who cited defendant testified defendant sells "a wide variety, everything from hardware supplies to groceries."

Under the terms of the ordinance if, as we hold, defendant was operating a variety store it is immaterial that the articles sold were groceries. But, under the ordinance, even if he was operating a "grocery or milk" store he could sell groceries and milk on Sunday only between the hours of 1:00 P.M. and 6:00 P.M. Also having in stock hobby supplies could not excuse a sale of milk and groceries at other hours on Sunday.

■ To summarize, we think it is apparent defendant was doing much more than operating a hobby shop and, in fact, was operating a variety store. The fact that some of the various items sold included hobby supplies would not make the store any less a variety store.

We agree with defendant that if he had been operating only a hobby shop, he would have been free to sell on Sunday items properly falling within the category of hobby supplies. Such is not the case, however, under the record.

The ordinance is attacked on the ground that it is too vague and is so arbitrary and discriminatory as to make it unconstitutional and void. We cannot agree.

In Kirk v. Olgiati, 203 Tenn. 1, 308 S.W.2d 471, the Supreme Court considered and rejected a similar attack upon an ordinance of the City of Chattanooga, later amended as we understand to read as shown above. In an opinion by Mr. Justice Burnett, now Chief Justice,

the Court held that the closing of general merchandise, department, hardware, furniture and grocery stores, super markets and similar establishments is not discriminatory, arbitrary and an unreasonable exercise of the police power, on the theory that drug stores, curb markets, filling stations and similar establishments selling the same goods as grocery stores are permitted to stay open.

In so far as concerns defendant, the material difference between the ordinance sustained in that case and the ordinance as it now reads is that variety stores are now included with the list of stores required to close on Sunday.

■ As applied to variety stores we do not find the ordinance as now written to be ambiguous or vague, as argued by defendant. The descriptive term variety store has a commonly accepted meaning, as evidenced by the fact it is carried in dictionaries. Indeed, we do not understand defendant attacks the ordinance on the ground variety stores are not such a well understood classification as to afford adequate notice of its application, intent and purpose.

In view of Kirk v. Olgiati, supra, we see no point in going over the same ground by reviewing and discussing the numerous authorities cited in defendant's brief to sustain his attack upon the ordinance.

Affirmed and remanded for enforcement of the judgments. Costs are adjudged to defendant and surety on his appeal bond.

Cooper and Parrott, JJ., concur.