The CITY OF BISMARCK, a Municipal Corporation, Appellant,

v.

Al MATERI, Respondent.

Crim. No. 394.

Supreme Court of North Dakota.

June 1, 1970.

John A. Zuger, Sr., and Frederick E. Saefke, Jr., Bismarck, for plaintiff and appellant.

Rausch & Chapman, Bismarck, for defendant and respondent.

ERICKSTAD, Judge, on reassignment.

By complaint dated March 31, 1969, Mr. Materi was charged with having violated Subsection 13 of Ordinance 22.0401 of the City of Bismarck. Subsection 13 prohibits, with certain exceptions, the conducting of business or labor for profit on Sundays. On being tried for this offense, Mr. Materi was found guilty and sentenced. He thereafter appealed from the sentence of the municipal court to the district court.

In the district court the case was tried on a stipulation of facts, the pertinent part of which reads as follows:

1. That this appeal may be presented to the Honorable M. C. Fredricks, one of the Judges of the District Court in and for the County of Burleigh, State of North Dakota, upon this Stipulation and upon the briefs as contained in the file.

2. That attached hereto is a true and correct copy of the ordinance of the City of Bismarck.

3. That the parties will secure and present such additional evidence or testimony as to the Court may seem proper and will appear and present oral argument, should the same be desired by the Court.

4. That Al Materi is a resident of the City of Bismarck and on March 30, 1969, he was an owner-manager of a grocery store regularly employing more than three employees for the operation of said store.

5. That said store made sales of various goods, items or commodities on said date, including items or articles not specifically listed as being exempt from the provision of said ordinance.

6. That at said time and in said City there were grocery stores open and doing business and selling all items, articles and commodities as sold or offered for sale by the defendant and that said stores regularly employed not more than three employees for the operation of said store.

7. That the question before the Court relates to the constitutionality of the Sunday Business Ordinance of the City of Bismarck, which allows certain busi-

nesses to be conducted on Sunday, to-wit:

22.0401 (13) (E) "Notwithstanding any other provisions of this ordinance, the operation of any of the following businesses shall be allowed on Sundays:

'Grocery stores operated by the owner-manager who regularly employs not more than three employees for the operation of said store.' "

8. That the defendant has heretofore filed a Motion to Quash and Set Aside and that the same is now a part of the file for consideration of the Court as though filed anew in this action.

The pertinent part of the motion to quash referred to in the stipulation of facts reads as follows:

1. That the Complaint does not charge the commission of a public offense for which defendant can be tried;

2. That the defendant has been and will be deprived of his property without due process of law; .

3. That defendant has been deprived of equal protection of the law;

4. That said ordinance upon which the charge is based and the Complaint issued, is in violation of the Constitution of the State of North Dakota and the rights of defendant provided for in the Constitution of the United States of America; and

5. That said ordinance upon which the Complaint was so issued is in violation of Sections 1, 11, 13 and 20 of the North Dakota Constitution and Article XIV of the Constitution of the United States.

By order dated the 15th of December, 1969, the district court in effect granted the motion on the ground that that part of the ordinance which permits grocery stores operated by owner-managers who regularly employ not more than three employees to do business on Sunday, and thus prohibits those grocery stores operated by owner-managers who regularly employ more than three employees from doing business on Sunday, is unconstitutional as a denial of equal protection and due process of law.

The City of Bismarck appeals from the judgment entered on the afore-described order of the district court to this court, but before we may consider the merits of the case on appeal we must determine a motion which has been made in our court to dismiss the appeal upon the ground that the City is without statutory or constitutional authority to perfect an appeal in this case.

■ In considering this motion to dismiss the appeal we start with the proposition that appeals are statutory and that ordinarily unless a statute provides for an appeal, no right to appeal exists.

■ In a decision rendered by this court in July of 1955, wherein this court held that the City of Minot had no right to appeal from a judgment of its police magistrate acquitting a defendant of a charge of violating its ordinance prohibiting driving a motor vehicle upon a highway of the City while under the influence of intoxicating liquor, this court quoted from Corpus Juris Secundum and McQuillin on Municipal Law as follows:

In 62 C.J.S. Municipal Corporations § 364, p. 707 it is stated:

"When the jurisdiction over the proceedings for the violation of a municipal ordinance or regulation is conferred on a particular court, its decision when acting within its jurisdiction is final, and there is no right to review it except when authorized by law. The right to appeal is purely statutory and is a right which it is within the province of the legislature to allow or withhold."

And in Vol. 9 McQuillin, Mun.Corp., 3rd Ed., Sec. 27.65, page 719 a statement of similar import is made.

"The right to review proceedings for violation of a municipal ordinance by appeal, not being inherent, exists only when authorized by law. No such right is recognized at common law—unless guaranteed by the constitution it is wholly statutory. The principle is well established that, when a particular jurisdiction is conferred upon an inferior court, its decision when acting within its jurisdiction, is final, unless provision is made for an appeal from such decision."

City of Minot v. Kitzman, 71 N.W.2d 633, 636 (N.D.1955).

In another case involving the City of Minot, decided later in the year 1955, this court said:

When a person is arrested and deprived of his liberty under a village ordinance prohibiting an offense, likewise prohibited by state law as against public welfare, and where the penalty may be imprisonment, such ordinance is criminal in nature and criminal procedure applies.

City of Minot v. Whitfield, 71 N.W.2d 766, Syllabus 1 (N.D.1955).

Accordingly, this court held that under those circumstances the City had no right to move for a new trial after the defendant had been acquitted of violating an ordinance which prohibited an act also prohibited by State law.

It is to be noted, however, that in neither of those cases was the dismissal based upon the unconstitutionality of the ordinance.

There are two things then that distinguish this case from the two previously cited cases so strongly relied upon by the movant. The first distinguishing feature is that in this case the appeal that is being questioned is the appeal from the district court to this court, not an appeal from municipal court to district court, and the second distinguishing feature is that in this case the judgment appealed from is a judgment of dismissal based upon the ground that the ordinance itself is unconstitutional and not upon a finding that the ordinance was not violated.

Noting those distinguishing features, are we nevertheless prohibited from considering the appeal on its merits for the reason that no statute appears to exist which specifically provides for an appeal on the part of a city from an adverse judgment rendered by a district court in a case involving an alleged violation of a city ordinance?

Before we answer that question we think it important to note that if we were to apply the criminal procedure appropriate in an appeal by the State from an order granting a motion to quash an information or an indictment in district court, appeal would lie.

See Section 29–28–07, N.D.C.C., the pertinent part of which reads:

29–28–07. From what the state may appeal.—An appeal may be taken by the state from:

1. An order quashing an information or indictment or any count thereof;

\* \* \* \* \* \*

It is obvious that the ordinance under consideration is patterned after Chapter 12–21.1, N.D.C.C. The pertinent part thereof is Section 12–21.1–04(28), which reads:

12–21.1–04. Businesses exempt.—Notwithstanding any other provisions of this chapter, the operation of any of the following businesses shall be allowed on Sundays:

\* \* \* \* \* \*

28. Grocery stores operated by the owner-manager who regularly employs not more than three employees for the operation of said store.

\* \* \* \* \* \*

We see then that we have before us a City ordinance prohibiting an offense likewise prohibited by State law as against public welfare which provides a penalty that could include imprisonment.

Under the reasoning of *Whitfield* applying criminal procedure to municipal court, shouldn't the appeal by the City be allowed in this case? We think so, but we believe there is a more compelling reason for holding the City entitled to appeal in this case, notwithstanding that there is no specific statute providing for appeal by the City and that is based upon the application of Section 89 of the North Dakota Constitution to this case. It reads:

Section 89. The supreme court shall consist of five judges, a majority of whom shall be necessary to form a quorum or pronounce a decision, but one or more of said judges may adjourn the court from day to day or to a day certain, provided, however, that in no case shall any legislative enactment or law of the state of North Dakota be declared unconstitutional unless at least four of the judges shall so decide.

Our legislature has authorized our cities to enact ordinances which, when properly adopted, may be enforced by fines, penalties, and forfeitures and have the same effect as a law enacted by our legislature. The pertinent part of Section 40–05–01, N.D.C.C., giving our municipalities such power, reads:

40–05–01. Powers of all municipalities.—The governing body of a municipality shall have the power:

1. Ordinances. To enact or adopt all such ordinances, resolutions, and regulations, not repugnant to the constitution and laws of this state, as may be proper and necessary to carry into effect the powers granted to such municipality or as the general welfare of the municipality may require, and to repeal, alter, or amend the same. * * * Fines, penalties, and forfeitures for the violation thereof may be provided within the limits specified in this chapter notwithstanding that such offense may be punishable also as a public offense under the laws of this state;

\* \* \* \* \* \*

Under Section 89 of our State Constitution only upon agreement of four of the five judges of our State Supreme Court may a statute enacted by our legislature be struck down as unconstitutional. Would it not grossly offend the spirit of that section of our Constitution to permit one district court judge to have the final say on the constitutionality of a city ordinance which is supposed to have the effect of law? We think so. This is not to say that a district court may not pass on the constitutionality of an ordinance, but it is to say that that decision may not be the last word. In other words, it appears to us that appeal must lie when properly taken from a decision of a district court holding a city ordinance unconstitutional, or Section 89 of our State Constitution would be thwarted. Accordingly, we so hold.

We must now decide the merits of this appeal.

The district court held that the Sunday closing ordinance violates Sections 1, 11, 13 and 20 of the North Dakota Constitution and Article XIV of the United States Constitution.

Those sections read as follows:

Section 1. All men are by nature equally free and independent and have certain inalienable rights, among which are those enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness.

\* \* \* \* \* \*

Section 11. All laws of a general nature shall have a uniform operation.

\* \* \* \* \* \*

Section 13. In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and

defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law.

\* \* \* \* \* \*

Section 20. No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens.

Constitution of North Dakota.

### (ARTICLE XIV)

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Constitution of the United States.

The trial court in holding this ordinance unconstitutional relied on the 1964 decision of Terry Carpenter, Inc. v. Wood, 177 Neb. 515, 129 N.W.2d 475 (1964). It is basically upon *Carpenter* that Mr. Materi relies in his efforts to uphold the trial court's order in this court. Our court looks to decisions of other states for guidance, but it is not bound by those decisions. In respect to questions involving the United States Constitution, not only does our court receive guidance from the decisions of the United States Supreme Court, but it is bound by those decisions.

In 1966, two years after *Carpenter*, we sustained our Sunday closing statutes against the attack that they violated Article I, Article V, and Section 1 of Article XIV of the Amendments to the United States Constitution, and Sections 4 and 20 of the North Dakota Constitution. State v. Gamble Skogmo, Inc., 144 N.W.2d 749 (N.D.1966). When Senate Bill 63 became law during the 1967 session of our legislature, Sections 12–21–14, 12–21–15, 12–21–16, 12–21–17, 12–21–20, 12–21–21, 12–21–22, N.D.C.C., were repealed. In their stead out legislature enacted Sections 12–21.1–01 through 12–21.1–07.

The legislative objective of providing a day of rest and recreation and the method of attaining that objective, of the pre–1967 Sunday closing statutes, were approved by our court in *Gamble Skogmo*. The 1967 legislation has the same objective as the pre–1967 legislation. It generally prohibits the doing of business or labor for profit on Sunday and, similar to the pre–1967 legislation, it provides certain exceptions. Section 12–21.1–03 exempts certain commodities from the prohibition against sale on Sunday which the legislature deemed essential to its objective of providing a day of rest and recreation. Section 12–21.1–04 exempts certain businesses from the prohibition of operating on Sunday which the legislature obviously also believed necessary to the accomplishment of the same objective.

We think that the rules applied in *Gamble Skogmo,* based on the reasoning of the United States Supreme Court decisions referred to therein, are pertinent here. See McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961); and Gallagher v. Crown Kosher Super Market, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536 (1961).

 Paragraphs 1 through 9 of the syllabus of *Gamble Skogmo* apply to this case:

1. The Fourteenth Amendment to the United States Constitution permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than they affect others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.

2. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.

3. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

4. The problem of legislative classification admits of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.

5. Only invidious discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

6. Neither the Due Process Clause nor the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution demands logical tidiness. No finicky or exact conformity to abstract correlation is required of legislation. The Constitution is satisfied if a legislature responds to the practical living facts with which it deals. Through what precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial re-examination. It is enough to satisfy the Constitution that in drawing them the principle of reason has not been disregarded, and what degree of uniformity reason demands of a statute is a function of the complexity of the needs which the statute seeks to accommodate.

7. In the case of Sunday legislation, an extreme complexity of needs is evident. This is so, first, because one of the prime objectives of the legislation is the preservation of an atmosphere—a subtle desideratum, itself the product of a peculiar and changing set of local circumstances and local traditions; but in addition, in the achievement of that end, however formulated, numerous compromises must be made. Not all activity can halt on Sunday. Some of the very operations whose doings most contribute to the rush and clamor of the week must go on throughout that day as well, whether because life depends upon them, or because the cost of stopping and restarting them is simply too great, or because to be without their services would be more disruptive of peace than to have them continue. Many activities have a double aspect: providing entertainment or recreation for some persons, they entail labor and workday tedium for others. These factors require that a broad discretion be accorded the legislature in enacting laws on this subject.

8. That more or fewer activities than fall within the exceptions of our Sunday closing laws could with equal rationality have been excluded from the general ban does not make irrational the selection which has actually been made.

9. A statute is not to be struck down on the supposition that various differently treated situations may in fact be the same.

State v. Gamble Skogmo, Inc., 144 N.W. 2d 749, 752, 753, Syllabus 1 through 9 (N.D.1966).

 Applying that reasoning, we discern no basis for invalidating the general provisions of 12–21.1–03 and 12–21.1–04 of our code or the general provisions of Subsection 13 of Section 22.0401 of the

Ordinances of the City of Bismarck, which are similar thereto.

This brings us to Subsection 28 of Section 12–21.1–04, N.D.C.C., which exempts "Grocery stores operated by the owner-manager who regularly employs not more than three employees * * *." This section is similar to that provision of E of 13 of Bismarck City Ordinance 22.0401, which exempts "Grocery stores operated by the owner-manager who regularly employs not more than three employees * * *."

This type of exemption was not contained in our pre-1967 Sunday closing legislation. We are now, therefore, presented with the problem of determining whether this type of exemption is so unreasonable or arbitrary that it constitutes an improper classification or, in other words, amounts to invidious discrimination prohibited by both the United States Constitution and our State Constitution.

It seems to be Mr. Materi's position that since we struck down a classification as being arbitrary and unreasonable in Melland v. Johanneson, 160 N.W.2d 107 (N.D. 1968), we must also strike down the classification here between those grocers who regularly employ more than three and those who regularly employ three or fewer persons.

■■■ In *Melland* we said: "Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts." Melland v. Johanneson, *supra,* Syllabus 7.

Let us look briefly at *Melland.* We think that the classification found to constitute invidious discrimination in *Melland* was much different from the classification here involved. In *Melland* we were considering the validity of legislation intended to eliminate abuses that result from conflicts of interest on the part of persons elected to the legislature.

Paragraphs 8 and 9 of the syllabus in *Melland* show what we struck down and why. They follow:

8. That feature of N.D.C.C. § 54–03–21 which distinguishes between legislators who render services or do business with the State or its subdivisions, depending on whether they render services or do business in excess of or less than $10,000 in any calendar year, constitutes an arbitrary classification, one that cannot be supported by reason, which causes the section to fall as being in contravention of §§ 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution as a denial of the equal protection of the laws.

9. That feature of N.D.C.C. § 54–03–21 which distinguishes between a stockholder-legislator and his spouse and an employee-legislator and his spouse by permitting a partnership, corporation, or association which employs a legislator to do any amount of business with the State or its subdivisions but prevents a similar partnership, corporation, or association from doing more than $10,000 business with the State or its subdivisions if any of its members or stockholders or their spouses owning five per cent or more of its assets serves in the legislature constitutes an arbitrary classification, which causes the section to fall as being in contravention of §§ 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution as a denial of the equal protection of the laws.

Melland v. Johanneson, 160 N.W.2d 107, 109, Syllabus 8 and 9 (N.D.1968).

In reaching the conclusion stated in No. 8 of the syllabus, we said:

In the instant case, particularly as the issue relates to the $10,000 limit, size is not the index of the evil. The evil is that a legislator might permit his vote to be influenced by personal interests; its index is the *existence* of the personal interest, not the amount of money involved. How can it be said that a legislator-employee of the State or one of its

subdivisions, if he were susceptible to such an influence at all, would be any less influenced if his salary were less than $10,000 than if it were more than $10,000, if that salary depended upon the passage of an appropriation measure? The same question would apply to the legislator-businessman.

Melland v. Johanneson, *supra*, 115.

In the instant case, however, size of the business as determined by the number of persons regularly employed would make a difference in the number of people working and thus being deprived of their day of rest and recreation and would affect the extent of disruption of the day to others. We do not think it unreasonable that the legislature, and in this case the City, concluded that it was necessary to permit for the benefit of the public the operation of certain small grocery stores on the day set aside for rest and recreation.

 As Justice Frankfurter pointed out in his special concurring opinion to *McGowan* in quoting Mr. Lloyd in the course of the debate in Commons on the English Sunday Closing Act of 1936, which we quoted in *Gamble Skogmo*, "* * * the problem is to strike a just balance between the reasonable needs of the public and the equally reasonable desire of the great bulk of those engaged in the distributive trades to enjoy their share of Sunday rest and recreation." State v. Gamble Skogmo, Inc., *supra*, 144 N.W.2d at 761. It is not unreasonable to assume that our legislature and the city government in this case had such an objective in mind. Accordingly, we do not find the classification incorporated in this exemption to constitute invidious discrimination.

In State v. Miller, 129 N.W.2d 356 (N.D.1964), a case in which one of our game laws was under attack as being violative of Section 20 of our State Constitution, we pointed out that this court on numerous occasions has held that Section 20 of our Constitution does not prohibit the legisla-

ture from making classifications, provided the classifications are reasonable.

No contention is made in the instant case and there was no contention in *Miller* that the legislature lacked authority generally to enact legislation covering the subject—in *Miller,* to protect big game—in this case to provide a day of rest and recreation.

 A pertinent part of *Miller* follows:

The contention is, rather, that the legislation violates the constitution of the State in that it grants privileges and immunities to a class of citizens designated as "owner operators" and "operators" that it does not grant to the defendant, and that for this reason it is unconstitutional.

As we have seen, merely because a statute distinguishes between citizens or classes of citizens does not make it unconstitutional. If a classification is reasonably necessary to effect the purposes of a law which is otherwise within the province of the Legislature to enact, the classification will not render the law repugnant to the Constitution.

State v. Miller, 129 N.W.2d 356, 364 (N.D.1964).

Finding a reasonable basis in *Miller* for the classification, we held the classification not invalid.

Thus far in this opinion we have referred to the fact that the trial court relied for its decision upon Terry Carpenter, Inc. v. Wood, 177 Neb. 515, 129 N.W.2d 475 (1964), but otherwise we have not discussed that opinion. From what we have said it is obvious that we do not agree with the philosophy behind the *Carpenter* holding that the exemption in the Nebraska Sunday closing statute which permits retail outlets who employ not more than two persons to do business on Sunday is unconstitutional.

It is interesting that although that court was faced with the same constitutional is-

sues with which we are confronted, it made only a fleeting reference to the four United States Supreme Court decisions which are the landmark cases in this field of law. Its only reference was to a point which it acknowledged but did not apply. In discussing the difficulty involved in classification, it said:

We appreciate that exact conformity or absolute harmony and symmetry between groups, while desirable, are not always attainable. The provisions of the federal Constitution are met if a legislature responds to the practical everyday facts with which it deals. See McGowan v. Maryland, 366 U.S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393.

Terry Carpenter, Inc. v. Wood, *supra,* 479.

We think it is pertinent that decisions of state courts more recent than *Carpenter* have taken a position contrary to *Carpenter* and in accord with the position we have taken here today.

In a November, 1967, decision the supreme court of Pennsylvania in Bertera's Hopewell Foodland, Inc. v. Masters, 428 Pa. 20, 236 A.2d 197 (1967), the majority of the Pennsylvania Supreme Court upheld the Pennsylvania Sunday closing statute against the attack that it was unconstitutional in violation of the Fourteenth Amendment of the Constitution of the United States and Article III, Section 7, P.S., of the Pennsylvania Constitution. Exceptions to the prohibition against Sunday sales which were upheld related to (1) stores which employed no more than nine persons; (2) stores owned and run by a person and members of the owner's immediate family; and (3) establishments which prepared food on the premises for eating purposes. In justifying classification that permitted establishments which employed fewer than ten persons to do business on Sunday, Justice Musmanno, writing the majority opinion, said:

A reading of Exception No. 1 clearly demonstrates that it applies only to such establishments that employ less than 10 persons at *any* time. The purpose of Exception No. 1 is to allow small stores to operate for necessitous purposes. It is common knowledge that, despite the ever-swelling dimensions of modern metropolises, a high percentage of the Commonwealth's population still lives in small towns or semi-rural communities, where restaurants and hotels are not as plentiful as lamp posts. In the absence of those modern dining facilities, the non-urban people turn to what has, for the last century or two, been the all-provider, as a hen with her chicks, for the village, hamlet, and town, namely, the corner grocery store. Thus, the General Assembly legislated into permanent Sunday existence this purely American institution. To prevent, however, that the little shop should take on a size and shape which would turn it into something more than the proverbial corner grocery store, the Legislature placed a limit of 9 persons on the number who could be employed in the store.

Bertera's Hopewell Foodland, Inc. v. Masters, *supra,* 204.

At a later page of the majority opinion Justice Musmanno said:

The American workingman is entitled to a day of rest with his family. While it is obvious that, because of works of necessity, charity, and recreation, some persons will be required to toil on Sunday, the number so engaged must be kept at a minimum. That is the Keystone of the Sunday Closing Laws as they span nearly three centuries of American Life.

Bertera's Hopewell Foodland, Inc. v. Masters, *supra,* 207.

In February of 1969 the Court of Appeals of Tennessee in Bookout v. City of Chattanooga, cert. denied, 442 S.W.2d 658 (1969), upheld an ordinance of the City of

Chattanooga against attack that it was too vague and so arbitrary and discriminatory as to make it unconstitutional. The ordinance prohibited variety stores from doing business on Sunday while permitting hobby shops to do business on Sunday.

By a decision rendered in April of 1967, the supreme court of New Hampshire answered ten of eleven questions propounded to it by the House of Representatives relating to the constitutionality of the proposed act to regulate the operation of business on Sundays and certain annual holidays. See Opinion of the Justices, 108 N. H. 103, 229 A.2d 188 (1967).

In discussing the issue pertinent to this part of this appeal, the New Hampshire court said:

> Questions 2 and 8 seek to determine the constitutionality of provisions of Senate Bill No. 40 which would except from the operation of the law certain stores "according to the number of employees such business has" (Q. 8), and in particular the operation of "stores wherein no more than five persons, including the proprietor, are employed on Sunday and throughout the week in the usual and regular conduct of business * * * as set forth in section 3 of Senate Bill No. 40." (Q. 2).
>
> * * * * * *
>
> In considering similar questions in Two Guys, etc. v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551, supra, where the issue of discrimination was raised by the proprietors of a large discount department store under the Sunday closing law of Pennsylvania, the Supreme Court of the United States said: "It was within the power of the legislature to have concluded that these businesses were particularly disrupting the intended atmosphere of the day because of the great volume of motor traffic attracted, the danger of their competitors also opening on Sunday and their large number of employees. 'Evils in the same field may be of different dimensions and

> proportions, requiring different remedies. * * * Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others.' Williamson v. Lee Optical, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563." Two Guys, etc. v. McGinley, supra, 366 U.S. at 591, 592, 81 S.Ct. 1140.
>
> Similar principles, applied under the provisions of our own Constitution, lead to a like conclusion. " '[T]he state is not bound to cover the whole field of possible abuses.' Welch Co. v. State, 89 N.H. 428, 432, 199 A. 886, 899, 120 A.L. R. 282." Chronicle etc., Pub. Co. v. Attorney-General, 94 N.H. 148, 152, 48 A. 2d 478, 481, 168 A.L.R. 879.
>
> In a recent advisory opinion to the Legislature submitted in response to questions with respect to analogous provisions of a pending bill, the Justices of the Supreme Judicial Court of Maine pointed out that classification according to number of employees is common practice in workmen's compensation and employment security laws. See RSA 281:2 I; 282:1G. With respect to provisions resembling those referred to in your questions, they had this to say: "The Legislature might conclude that these adverse effects would be kept to a minimum if only small stores as defined were permitted to open and that the public interest would be best served by excepting as a class the proprietors of small stores. The Legislature could properly take into account the economy of the State and the dependency of many small stores and shops upon the patronage of vacationers and tourists." Opinion of the Justices, 159 Me. 410, 417–418, 191 A.2d 637, 641. See Opinion of the Justices, 103 N.H. 268, 270, 169 A.2d 762.

Opinion of the Justices, 108 N.H. 103, 229 A.2d 188, 192, 193 (1967).

This brings us to the last issue to be determined in this case and that is whether the provisions of paragraph C of Subsection 13 of Ordinance 22.0401 make the ordinance unconstitutional. Paragraph C reads:

Nothing in this ordinance shall apply to any person who in good faith observes a day other than Sunday as a sabbath if he refrains from engaging in or conducting business or labor for profit and closes his place of business to the public on that day.

Incidentally, C of Subsection 13 of Ordinance 22.0401 is similar to 12–21.1–02, N.D.C.C., which reads:

Exemption.—Nothing in this chapter shall apply to any person who in good faith observes a day other than Sunday as the Sabbath if he refrains from engaging in or conducting business or labor for profit and closes his place of business to the public on that day.

Opinion of the Justices, the April 1967 decision of the supreme court of New Hampshire, also covered the constitutionality of a similar exemption contained in the proposed New Hampshire legislation. We quote from that decision:

Your Question 4 seeks to determine whether another exception contained in section 3 of the bill, pertaining to places of business in the control of Sabbatarians, would be invalid under any constitutional provision, or in particular the religious establishment clause of the First Amendment. This exception is stated by section 3 of the bill as follows: "* * * any secular place of business not otherwise prohibited by law if the natural person in control of the business conscientiously believes that the seventh day of the week, or the period which begins at sundown on Friday night and ends at sundown on Saturday night, should be observed as the Sabbath, and causes all places of business in New Hampshire over which he has control to remain closed for secular business during the entire period of twenty-four consecutive hours which he believes should be observed as the Sabbath, and actually refrains from engaging in secular business and from laboring during that period. * * *"

In Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563, supra, the Supreme Court of the United States had before it a Sunday closing law of the Commonwealth of Pennsylvania which contained no such exception. In holding that the absence of such an exception did not render the statute unconstitutional four of the Justices concurred in the following statement: "A number of States provide such an exception, and this may well be the wiser solution to the problem." Id., p. 608, 81 S.Ct. p. 1148. Two other Justices were of the opinion that absent such a provision, the plaintiff's rights under the free exercise clause were violated. Id., pp. 610, 616, 81 S.Ct. 1144. See also, Gallagher v. Crown Kosher Super Market, 366 U.S. 617, 81 S.Ct. 1122, 6 L.Ed.2d 536; Arlan's Dept. Store of Louisville, Inc. v. Kentucky, 371 U.S. 218, 83 S.Ct. 277, 9 L.Ed.2d 264; Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965.

In a recent study entitled "Statute for a Common Day of Rest," in which a model statute was proposed, this comment was made with respect to a Sabbatarian exemption there suggested: "This possibility [that Braunfeld v. Brown, supra, might be overruled] in itself might well be considered sufficient to warrant a Sabbatarian exemption. Moreover, the exemption does seem to be the wiser, fairer and more just solution to the problem. The operation of a small group of businesses on Sunday in the manner required by the statute does little to interfere with the secular purposes of the act." 3 Harv.J. on Legislation, 345, 351. See also, Me. Rev.Stat.Ann., Title 17, ss. 3201–3209; Mass.Gen.L.Ann. ch.

136 (Supp. 1964). The answer to Question 4 is "no."

Opinion of the Justices, *supra,* 192, 193, 194.

 It is not clear whether Mr. Materi has raised the constitutional issue that the Sabbatarian exemption is violative of Article I of the Amendments to the United States Constitution and Section 4 of the North Dakota Constitution, as a law prohibiting the free exercise of religion. But if it is his view that he has raised such an issue, we are of the opinion that although we sympathize with the view expressed by the New Hampshire court, we need not consider the question in this case, as Mr. Materi alleges only economic injury and does not allege infringement of a specific religion embraced by himself, his employees, or his customers. As the general rule is that a litigant may assert only his own constitutional rights or immunities and as Mr. Materi has presented no weighty countervailing policies here, to cause an exception to the general rule, we hold that he has no standing to raise the contention that the statute prohibits the free exercise of religion contrary to the First Amendment to the United States Constitution or Section 4 of the North Dakota Constitution. See McGowan v. State of Maryland, 366 U.S. 420, 429, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); State v. Gamble Skogmo, Inc., 144 N.W.2d 749, 769 (N.D.1966).

Should it be Mr. Materi's contention that he is attacking the Sabbatarian clause not for the reasons which we have assumed to be his basis for attack, but for the reasons stated by the Nebraska court in *Carpenter,* we think it is sufficient to say that we reject that part of the Nebraska opinion as well as the other parts heretofore rejected.

The Nebraska court summarily disposed of the issue relative to the Sabbatarian exemption as follows:

L.B. 710 also requires businesses observing Saturday as the Sabbath to close and to keep closed on Saturday if they wish to open on Sunday. The discrimination appears when we realize that Saturday Sabbatarians are not permitted to sell the excepted articles and commodities on Saturday, while all other businesses covered by the act may sell the excepted goods on Sunday. The discrimination is so obvious it requires no further discussion.

Terry Carpenter, Inc. v. Wood, *supra,* 129 N.W.2d at 481.

We are not so easily convinced. The Minnesota supreme court found its 1967 statute prohibiting the Sunday sale of specified classes of commodities designated as restricted to be unconstitutional, being so vague and uncertain in its statutory scheme and criminal consequences as to violate the due process clause of the Fourteenth Amendment. Notwithstanding, it found the Sabbatarian section valid. We quote:

The specific deprivation of religious liberty asserted in the instant case is that a person who is a Sabbatarian is given the alternative of closing *completely* on Saturday, whereas a person who either observes Sunday or no day as a religious Sabbath may operate all day Saturday *and* also on Sunday for the sale of restricted items. We would hold against this argument upon the authority of the Sunday Closing Cases, for the Pennsylvania and Massachusetts statutes were there sustained even though no option whatever was given to Sabbatarians. Mr. Chief Justice Warren stated in the Braunfeld case (366 U.S. 607, 81 S.Ct. 1148, 6 L.Ed.2d 568):

"* * * [I]f the State regulates conduct by enacting a general law within its power, the purpose and effect of which is to advance the State's secular goals, the statute is valid despite its indirect burden of religious observance unless the State may accomplish its purpose by means which do not impose such a burden."

State v. Target Stores, Inc., 279 Minn. 447, 156 N.W.2d 908, 916 (1968).

In any case that issue is not before us either, because of Mr. Materi's lack of standing to raise the issue, he having not alleged that he or his employees or his customers are Sabbatarians.

Accordingly, we hold that Ordinance 22.-0401 is not violative of any of the asserted constitutional provisions of the United States Constitution or the North Dakota Constitution. We therefore conclude that for the reasons stated in this opinion the judgment of the trial court is reversed and a new trial is ordered.

STRUTZ and PAULSON, JJ., concur.

TEIGEN, Chief Justice (dissenting).

I dissent. The defendant was found guilty of an ordinance violation in the municipal court. He appealed to the district court under the provisions of Section 40–18–19, N.D.C.C. This section provides that an appeal may be taken from a judgment of conviction in the municipal judge's court to the district court in the same form and manner as appeals are taken and perfected from a judgment of conviction of a defendant in justice court. The appeal is taken in accordance with Sections 33–12–34, 33–12–35 and 33–12–39, N.D.C.C., and shall be tried in accordance with Sections 33–12–40 and 33–12–41, N.D.C.C., which statutes govern appeals from justice court. The appeal by the defendant transferred the action to the district court from the municipal judge's court for trial anew, regardless of any ruling of the municipal judge. The defendant, pursuant to the right granted under Section 33–12–40, N. D.C.C., moved for a dismissal of the complaint on the ground that the facts stated therein do not constitute a public offense. The motion for dismissal was premised upon the claim that the ordinance is unconstitutional. The district court granted the defendant's motion and ordered a dismissal of the complaint on the basis of its determination that the section of the ordinance under which the defendant was charged is unconstitutional. The city has attempted to appeal to this court from the district court's order of dismissal. The defendant moved, in this court, for a dismissal of the appeal upon the ground that the city is without statutory or constitutional authority to perfect an appeal to this court and, therefore, we do not have jurisdiction.

Section 86 of the Constitution provides:

"The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law."

Therefore, unless some method be prescribed by law whereby this court may exercise jurisdiction of this appeal, we cannot, by judicial fiat, assume jurisdiction. The right to appeal is not conferred by the Constitution but may be exercised only as prescribed by statute. There is no right to appeal in the absence of a statute conferring such right. State v. Bauer (N.D. 1967), 153 N.W.2d 895.

The ordinance under which the defendant is charged provides for a penalty, which may be in the form of imprisonment, and prohibits an offense which is, likewise, prohibited by State law, as has been pointed out in the majority opinion. Such ordinance, therefore, is criminal in nature and criminal procedure applies. City of Minot v. Whitfield (N.D.1955), 71 N.W. 766.

A criminal action for an offense prohibited by State statute is prosecuted in the

name of the State of North Dakota. Section 29–01–03, N.D.C.C. However, although Section 33–12–40, N.D.C.C., transfers the action to the district court for trial anew, it is not the exercise of original jurisdiction by the district court. City of Minot v. Davis (N.D.1957), 84 N.W.2d 891. Thus the city will continue to prosecute the action as plaintiff at the trial anew in the district court. For this reason, the statutes providing for appeal by the State in criminal actions are not applicable. There is no statute providing for appeal from the district court to the supreme court by the city in a case such as this. Therefore, there is no method prescribed by law whereby this court may exercise its appellate jurisdiction and it is my opinion that the appeal should be dismissed.

The order dismissing the complaint, from which this appeal is taken, was made under Section 33–12–40, N.D.C.C. Therefore, if the criminal appeal statutes governing the State were applicable, the order, nevertheless, is nonappealable because of the limitations of Section 29–28–07, N.D. C.C. This question was settled in State v. Bauer, *supra*, in which we held that an order made by the district court dismissing the complaint, under Section 33–12–40, N. D.C.C., is nonappealable.

I do not agree that Section 89 of our State Constitution would be thwarted because the Legislature has not conferred appellate jurisdiction upon this court by statute in every case where a constitutional question is involved. It appears to me that the same argument can be made as to any other question that may arise in a lawsuit. I see no magic in the number "four" as opposed to the number "three." It requires a majority of the five judges of this court to pronounce a decision in any case.

KNUDSON, concurs in the dissent of the Chief Justice.