Cynthia A. ROTHE, In Her Official Capacity as Cass County State's Attorney, Plaintiff and Appellant,

v.

S–N–GO STORES, INC., Defendant and Appellee.

Civ. No. 9978.

Supreme Court of North Dakota.

Aug. 3, 1981.

Bruce D. Quick, Asst. State's Atty., Fargo, for plaintiff and appellant; argued by Bruce D. Quick, Fargo.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for defendant and appellee; argued by C. J. Serkland, Fargo.

Lundberg, Conmy, Nodland, Lucas & Schulz, Bismarck, for North Dakota Retail Ass'n, amicus curiae.

Stefanson, Landberg & Alm, Moorhead, Minn., amicus curiae.

VANDE WALLE, Justice.

This is an appeal by the Cass County State's Attorney from a judgment of the District Court of Cass County, dated February 9, 1981, denying the State's Attorney's request for a permanent injunction under the Sunday Closing Law, Chapter 12.1–30, N.D.C.C., to restrain S-N-Go Stores, Inc. (S-N-Go), from operating its grocery stores on Sundays. We reverse and remand.

The State's Attorney and S-N-Go filed a stipulation of facts with the district court; those facts relevant to this appeal are as follows: S-N-Go is a North Dakota corporation which owns nine grocery stores in Cass County each of which is called a Stop-N-Go Food Store. S-N-Go has four stockholders none of which are involved in the operation or management of the grocery stores. Each store is operated by a separate individual manager hired by S-N-Go on a commission basis. Each store also has several part-time employees whose total hours, excluding those worked by the manager, are equal to or less than 120 hours per week. Thus, based upon a 40-hour week for full-time employment, each store regularly employs not more than three full-time employees. Although not included as part of the stipulation of facts, it is also undisputed that the S-N-Go grocery stores were open for business on Sunday, October 19, 1980, without limitation of the items offered for sale.

During October, 1980, the Cass County State's Attorney brought an action in district court, pursuant to Section 12.1–30–01, N.D.C.C., to enjoin the S-N-Go grocery stores from continuing to operate on Sunday. Chapter 12.1–30, N.D.C.C., prohibits the conduct of business or labor for profit on Sundays. Section 12.1–30–02, N.D.C.C., provides a list of personal property items which may be sold on Sunday, and Section 12.1–30–03, N.D.C.C., authorizes certain businesses to remain open on Sundays without limitation as to the items they may sell. In her action the State's Attorney asserted that the S-N-Go grocery stores must be limited to the Sunday sale of personal property items listed under Section 12.1–30–02, N.D.C.C., because they do not fall within the class of grocery stores exempted from the Sunday Closing Law under Subsection 28 of Section 12.1–30–03, N.D.C.C. (herein referred to as "the grocery store exception"), which states:

"The operation of any of the following businesses shall be allowed on Sundays:

\* \* \* \* \* \*

"Grocery stores operated by the owner-manager who regularly employs not more than three employees for the operation of said store." § 12.1–30–03(28), N.D.C.C.

The district court concluded that the S-N-Go stores met the requirements for exemption under Subsection 12.1–30–03(28), N.D.C.C., and, accordingly, it entered a judgment denying the State's Attorney's request for a permanent injunction.

In her appellate brief, the State's Attorney requests this Court to determine the following issue on appeal:

"Does S-N-Go Stores, Inc. with its corporate form of ownership, multiple stores, and multiple employees qualify for the small grocery store exception to the Sunday Closing Law pursuant to Section 12.-1–30–03(28), N.D.C.C.?"

The State's Attorney first asserts that no S-N-Go store meets the Subsection 12.1–30–03(28), N.D.C.C., requirement that the grocery store be "operated by the owner-manager," because S-N-Go, as a corporation, is the "owner" but cannot be the "manager" of its stores. The determination of this issue requires us to briefly examine, as did the district court, the history and purpose of the Sunday Closing Law.

Prior to the enactment of the grocery store exception under Subsection 12.1–30–03(28), N.D.C.C., this Court, upholding the Sunday Closing Law against constitutional attack, concluded that the purpose of the law was not to aid religion but to set aside a day of rest and recreation. *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749 (N.D. 1966). Subsequent to the enactment of the grocery store exception [1] that provision was challenged as to its constitutionality in *City of Bismarck v. Materi*, 177 N.W.2d 530 (N.D.1970). In *Materi, supra*, the owner-manager of a grocery store appealed from his conviction of doing business on Sunday in violation of a city ordinance, the pertinent provisions of which were identical to the state Sunday Closing Law. On appeal, Materi asserted that the grocery store exception violated his rights under the Equal Protection Clause because it prohibited the Sunday operation of grocery stores that regularly employ more than three employees while allowing grocery stores that regularly employ not more than three employees to remain open. In upholding the constitutionality of the grocery store exception this Court stated:

"... size of the business as determined by the number of persons regularly employed would make a difference in the number of people working and thus being deprived of their day of rest and recreation and would affect the extent of disruption of the day to others. We do not think it unreasonable that the legislature, and in this case the City, concluded that it was necessary to permit for the benefit of the public the operation of certain small grocery stores on the day set aside for rest and recreation.

"As Justice Frankfurter pointed out in his special concurring opinion to *McGowan*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) in quoting Mr. Lloyd in the course of the debate in Commons on the English Sunday Closing Act of 1936, which we quoted in *Gamble Skogmo*, 144 N.W.2d 749 (N.D.1966) ' * * * the problem is to strike a just balance between the reasonable needs of the public and the equally reasonable desire of the great bulk of those engaged in the distributive trades to enjoy their share of Sunday rest and recreation.' *State v. Gamble Skogmo, Inc., supra*, 144 N.W.2d at 761. It is not unreasonable to assume that our legislature and the city government in this case had such an objective in mind. Accordingly, we do not find the classification incorporated in this exemption to constitute invidious discrimination." 177 N.W.2d at 541.

In the instant case the district court, having examined the history and purpose of the Sunday Closing Law, concluded that, while the legislature intended to permit the Sunday operation of certain small grocery stores to accommodate the public need and to prohibit such operation of large grocery stores to achieve the objective of making Sunday a day of rest and recreation, there was no intent to prohibit the Sunday operation of all corporately held grocery stores. The district court noted that Subsection 12.1–30–03(28), N.D.C.C., makes no distinc-

---

1. The 1967 enactment of the grocery store exception to the Sunday Closing Law was codified as Subsection 28 of Section 12–21.1–04, N.D.C.C. As part of the 1973 revision of the criminal law statutes, the grocery store exception to the Sunday Closing Law, although not substantively changed, was reenacted as Subsection 28 of Section 12.1–30–03, N.D.C.C.

tion between small grocery stores owned by a sole proprietor and those owned in a corporate form, and it concluded that if the legislature intended to create a classification prohibiting the Sunday operation of all corporately owned small grocery stores while allowing the Sunday operation of such stores owned as proprietorships it had to do so affirmatively and not by implication. The district court also referred to Section 1–01–28, N.D.C.C., wherein the legislature recognized that a corporation is a person for the purposes of North Dakota law, and it then applied the principal that a corporation, as a person under the law, is entitled to equal protection of the laws as guaranteed by the federal and state constitutions. With these concepts in mind, the district court concluded that the State's Attorney's interpretation of "owner-manager" which would in effect exclude all corporately owned grocery stores from meeting the requirements of Subsection 12.1–30–03(28), N.D.C.C., would constitute an unconstitutional classification not rationally related to any legitimate governmental objective under the Sunday Closing Law. The district court then held that because a corporation must act in all things through its agents, including the operation or management of its grocery stores, the S-N-Go stores must be deemed to have met the "owner-manager" requirement of Subsection 12.1–30–03(28), N.D.C.C.

We agree with the district court's analysis that neither the purpose of the Sunday Closing Law nor the express language of Subsection 12.1–30–03(28), N.D.C.C., would justify an interpretation of "owner-manager" which would exclude all corporately held grocery stores from doing business on Sundays under the grocery store exception. We do not agree, however, that corporately held grocery stores automatically meet the "owner-manager" requirement of that provision.

■ The primary objective of statutory construction is to ascertain the intent of the legislature. State v. Moore, 286 N.W.2d 274 (N.D.1979). Every word used in a statute is to be given its plain, ordinary, and commonly understood meaning within the context in which it is used. Section 1–02–02, N.D. C.C.; Morton County v. Henke, 308 N.W.2d 372 (N.D.1981); Weber v. State Farm Mutual Automobile Insurance Company, 284 N.W. 2d 299 (N.D.1979). If possible, every paragraph, sentence, phrase and word used in a statute is to be given meaning and effect. In Interest of P. W. N., 301 N.W.2d 636 (N.D.1981); Besette v. Enderlin School District No. 22, 288 N.W.2d 67 (N.D.1980).

■ Thus, in construing the term "owner-manager" we must strive to use its commonly understood meaning while at the same time giving effect to the entire term; that is, to each part of that hyphenated term. Within the context of Subsection 12.1–30–03(28), N.D.C.C., we conclude that the term "owner-manager" requires the grocery store to be operated by an individual who fits the descriptions of being both "owner" and "manager". Thus, a grocery store operated as a sole proprietorship would meet the "owner-manager" requirement if the owner is also the manager who operates the store. However, a grocery store operating under a multiple form of ownership, such as a corporation or partnership, would meet the "owner-manager" requirement if the store is operated by one who is the "manager" of the business and who is also an "owner" of the business in the sense of having an ownership or equity interest in it. We are fully cognizant that under this interpretation the provision does not require that the manager also be the sole owner of the business. We do not believe that the provision would warrant such a result, because it merely requires that the grocery store be operated by "the owner-manager who regularly employs ..." In the context of a corporately owned grocery store, a shareholder who manages the store and hires its employees fits that requirement.

■ S-N-Go asserts that Subsection 12.1–30–03(28), N.D.C.C., unconstitutionally vio-

lates the Equal Protection Clause[2] if it is interpreted to treat two small grocery stores differently on the sole distinction that one store is operated by a manager who is also an owner of the business whereas the other store is operated by a manager who is a hired employee with no ownership interest. S-N-Go asserts that such a classification constitutes discrimination and does not constitutionally further any legitimate government objective under the Sunday Closing Law. We disagree.

In *McGowan v. State of Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), the United States Supreme Court upheld the validity of Maryland's Sunday Closing Laws against certain constitutional challenges including an assertion that the laws were in violation of the Equal Protection Clause. In so doing the Court set forth the following standard by which the Equal Protection challenge was to be evaluated:

"The standards under which this proposition is to be evaluated have been set forth many times by this Court. Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." 81 S.Ct. at 1105.

Under this standard, a statute is upheld under the Equal Protection Clause if the classification it draws is not patently arbitrary so as to constitute invidious discrimination and if it is rationally related to a legitimate government interest. *Law v.*

*Maercklein*, 292 N.W.2d 86 (N.D.1980); *City of Bismarck v. Materi*, 177 N.W.2d 530 (N.D.1970).

With regard to Subsection 12.1–30–03(28), N.D.C.C., it is not unreasonable to assume that the legislature required the manager to have an ownership interest in the business as a means of discouraging the proliferation of small grocery stores remaining open on Sunday. We perceive such requirement as a method rationally related to the legitimate objective of promoting Sunday as a day of rest and relaxation. Nor is it unreasonable to assume that the legislature, by such requirement, was attempting to allow the Sunday operation of only those grocery stores having an owner who, by virtue of his manager position, would have to work in the store on Sunday with his employees. Those grocery stores not having an owner who, as manager, was willing to sacrifice his rest and relaxation on Sunday to work in the store would likely remain closed on Sundays because of the practical need of any business to have a manager on duty during open hours. In this way, too, the requirement is a rational method by which to discourage the proliferation of grocery stores remaining open on Sundays. We conclude that the legislative requirement that the manager of a small grocery store must have an ownership interest in the business in order for that store to remain open on Sunday under Subsection 12.1–30–03(28), N.D.C.C., is rationally related to the legitimate government objective of providing a day of rest and relaxation and is not in violation of the Equal Protection Clause.

We recognize, however, that the "owner-manager" requirement constitutes a rational constitutional classification only if it is interpreted as requiring that the manager have something more than an insubstantial or token ownership interest in the business. For example, if we were to interpret the requirement as being met by a manager of a small corporately owned grocery store

"... No state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV, § 1.

who is given one share of common stock out of 10,000 such shares, the "owner-manager" requirement would be rendered meaningless. Under such an interpretation the requirement would constitute a mere paper technicality, and its effect toward discouraging the proliferation of small grocery stores remaining open on Sundays would be negligible. Such an interpretation would result in a classification not rationally related to a legitimate government objective and, therefore, in violation of the Equal Protection Clause. In construing a statute the courts must always strive to give it a constitutional interpretation. *First American Bank & Trust Co. v. Ellwein*, 198 N.W.2d 84 (N.D.1972). Accordingly, we interpret the "owner-manager" interest requirement under Subsection 12.1–30–03(28), N.D.C.C., as requiring that the manager have an ownership interest in the business which is something more than an insignificant token interest.

In the instant case, it is undisputed that no shareholder of S-N-Go currently participates in the operation or management of any store owned by the corporation. For that reason, none of the S-N-Go stores meet the "owner-manager" requirement of the grocery store exception, and it is unnecessary for us to determine today at what point a manager's ownership interest would be considered so insubstantial as to not comply with the "owner-manager" requirement under Subsection 12.1–30–03(28), N.D.C.C.

On appeal the State's Attorney also asserts that S-N-Go does not meet the "regularly employs not more than three employees" requirement of Subsection 12.1–30–03(28), N.D.C.C. As part of the stipulated facts, the State's Attorney and S-N-Go agreed:

"Each store has several part-time employees whose total hours, excluding the hours worked by the manager, are equal to or less than 120 hours per week. That is, based upon a 40 hour week for full-time employment, each store has the equivalent of not more than three full-time employees regularly employed in each store."

The State's Attorney asserts that S-N-Go does not meet the employee requirement because the corporation, although not regularly employing more than three employees at any one of the nine grocery stores, employs a total of approximately 25 employees.

As a consequence of the foregoing stipulation of facts no issue was brought before this Court concerning the appropriate method for determining the number of employees employed by a store. That issue not having been brought before us, we do not decide the validity of that method adopted by the parties in their stipulation of facts. With regard to the question raised we agree with the district court that a determination of whether or not a particular grocery store meets the employee requirement of Subsection 12.1–30–03(28), N.D.C.C., must be based upon an examination of the number of employees at that particular store. This interpretation is supported by the provision's express language which allows the Sunday operation of grocery stores operated by the owner-manager who "regularly employs not more than three employees *for the operation of said store.*" [Emphasis added.] The language of the provision unambiguously focuses the employee requirement on the "said store" for which an exemption from the Sunday Closing Law is being claimed. Based upon the stipulation of facts before us in this record, we conclude that the district court did not err in its determination that each of the Stop-N-Go stores held by S-N-Go meets the employee requirement of Subsection 12.1–30–03(28), N.D.C.C.

In view of our interpretation of the "owner-manager" requirement of Subsection 12.1–30–03(28), N.D.C.C., we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

ERICKSTAD, C. J., and PAULSON, SAND and PEDERSON, JJ., concur.