BEST PRODUCTS CO., INC.; Creative Kitchen; Fiancee; Gallery West; McLaughlin Equipment Co., d.b.a. McLaughlin RV & Marine; Peggy's Card Shops, Inc., d.b.a. Peggy's Hallmark Shops; Ram Enterprises, d.b.a. Miller's True Value Hardware & Hanky Panky Gift Shop; West Acres Development; River Valley Press, Inc., d.b.a. Wizard of Kids; AJ Video; Coborn's, Inc., d.b.a. Cash Wise Foods; Main Realty, Inc., d.b.a. Main & Company Realtors; Metro Drug Company; Lloyd's Motors; and Rita Weisz, Plaintiffs, Appellees and Cross–Appellants,

v.

Nicholas J. SPAETH, North Dakota Attorney General, Defendant, Appellant and Cross–Appellee.

Civ. No. 900216.

Supreme Court of North Dakota.

Sept. 6, 1990.

Nicholas J. Spaeth, Atty. Gen., Laurie J. Loveland, Terry Lee Adkins, Asst. Attys. Gen., Bismarck, for defendant, appellant and cross-appellee; argued by Nicholas J. Spaeth.

Wheeler Wolf, Bismarck, for plaintiffs, appellees and cross-appellants; argued by John M. Olson.

LEVINE, Justice.

This case presents, yet again, constitutional challenges to North Dakota's Sunday closing law. The district court rejected claims that the Sunday closing law was unduly burdensome on interstate commerce, that the law violated the establishment of religion clause, that the entire law was void as vague, and that the law was being selectively enforced. The district court concluded, however, that the law was discriminatory and violated equal protection because shop owners similarly situated were treated disparately without justification. It granted summary judgment in favor of those challenging the law and entered an order allowing any business to operate on Sunday so long as it does not sell prohibited items. The court then stayed the judgment pending resolution of this appeal.

The State appeals, challenging the declaration that the law violates equal protection. Plaintiffs below, a confederation of businesses and individuals opposed to the statute (hereafter "Challengers"), cross-appeal and renew their constitutional challenges. We reverse that part of the judgment that declares section 12.1–30–03, NDCC, unconstitutional and modifies section 12.1–30–01, NDCC.

## I. HISTORY

This court has examined the North Dakota Sunday closing law three times since the 1960s. In *State v. Gamble Skogmo, Inc.*, 144 N.W.2d 749 (N.D.1966), a large discount store, "Tempo," was convicted of "Sabbath breaking," having opened for the sale of its general merchandise on a Sunday. At the trial level and before this court, Tempo challenged the law, claiming violations of the equal protection, due process and establishment of religion amendments to the United States constitution, and equal protection and religious freedom clauses of the North Dakota constitution. 144 N.W.2d at 754. Quoting extensively from *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961), this court held that the law did not violate either the United States or North Dakota constitutions as there was no invidious discrimination, despite Tempo's argument that the classification between prohibited and allowable commodities was without a rational relation to the legislative purpose. 144 N.W.2d at 763. We also concluded that evidence that some of the law's prohibitions were not enforced against other enterprises did not prove an arbitrary and intentionally unfair discrimination in the enforcement of the law against Tempo. 144 N.W.2d at 765. Finally, we concluded that the choice of Sunday as a day of rest did not constitute an establishment of religion, but declined to decide the free exercise of religion argument because Tempo lacked standing. 144 N.W.2d at 769.

In 1967, the legislature enacted a new Sunday closing law by amending in part and repealing in part the law reviewed in *Gamble Skogmo*. S.L.1967, ch. 107. We reviewed that law in *Bismarck v. Materi*, 177 N.W.2d 530 (N.D.1970).[1] There, a district court had held a Sunday closing ordinance violated equal protection and due process under the United States and North Dakota constitutions. Applying the rules and reasoning set out in *Gamble Skogmo*,

---

1. Actually, *Materi* involved the constitutionality of a Bismarck ordinance patterned on the Sunday closing law. Since the two provisions were virtually identical, and the district court had found the ordinance unconstitutional, we applied our analysis to the ordinance and the statute. *Materi*, 177 N.W.2d at 539–40, 544.

we identified no constitutional basis for invalidating the general provisions of the statute or ordinance. 177 N.W.2d at 539. We examined the particular provision enforced against Materi, an exemption for "Grocery stores operated by the owner-manager who regularly employs not more than three employees." *Materi*, 177 N.W.2d at 540 [quoting NDCC § 12–21.1–04(28)]. Materi was an owner-manager of a grocery store and employed more than three employees. He argued that the distinction drawn by the classification was unreasonable. We noted, in response, that

> "[S]ize of the business as determined by the number of persons regularly employed would make a difference in the number of people working and thus being deprived of their day of rest and recreation and would affect the extent of disruption of the day to others. We do not think it unreasonable that the legislature, and in this case the City, concluded that it was necessary to permit for the benefit of the public the operation of certain small grocery stores on the day set aside for rest and recreation." *Materi*, 177 N.W.2d at 541.

Because Materi alleged only economic injury, and did not allege that he or his employees or customers observed a day other than Sunday as the Sabbath, we did not decide the constitutionality of a section exempting Sabbatarians from the restrictions of the law. 177 N.W.2d at 544–46.

The constitutionality of the small grocery store exception was also raised in *Rothe v. S–N–Go Stores, Inc.*, 308 N.W.2d 872 (N.D. 1981). In that case, the Cass County State's Attorney appealed from a denial of a permanent injunction restraining S–N–Go Stores, Inc. (S–N–Go) from operating its grocery stores on Sunday. S–N–Go was a corporation, owned by four shareholders, operating nine stores in Cass County. None of the shareholders was involved in the management of the stores; that was done by individual managers hired by the corporation on a commission basis. 308 N.W.2d at 873. After interpreting the "owner-manager" element of the exception, we concluded that the equal protection clause of the United States Constitution was not violated by a statute that treated "two small grocery stores differently on the sole distinction that one store [was] operated by a manager who [was] also an owner of the business whereas the other store [was] operated by a manager who [was] a hired employee with no ownership interest." *Rothe*, 308 N.W.2d at 876. Because the owner-manager requirement could have the effect of discouraging the proliferation of small grocery stores remaining open on Sunday, as would the practical requirement that the owner-manager work on Sunday, we concluded the requirement was rationally related to the legitimate government purpose of providing a day of rest and relaxation. *Id.* In each of these three cases, we applied the rational basis standard of review to the legislation whose purpose we deemed to be the promotion of rest and recreation.

## II. THE STATUTE

Since these cases were decided, the legislature has enacted a new version of the Sunday closing law. S.L.1973, ch. 116, amended by S.L.1985, ch. 183. The current law, chapter 12.1–30, NDCC, restricts commercial activities on Sunday. Section 12.1–30–01 makes it a class B misdemeanor to engage in or conduct business or labor for profit in the usual manner and location, or operate a place of business open to the public on Sunday, or to direct one's employees to act contrary to the statute. This section exempts a person whose faith observes a day other than Sunday as the Sabbath, provided that person, in fact, refrains from commercial activity on that alternate Sabbath day. Section 12.1–30–02 lists forty-four classes of goods that cannot be sold excepting some items sold at hobby shows, craft shows, fairs, exhibits and other types of sales for which sales tax permits are not required, and items sold by attractions deriving fifty percent of their annual gross sales from seasonal or tourist customers. Section 12.1–30–03 authorizes thirty-seven kinds of businesses to operate on Sunday, notwithstanding the general prohibition on Sunday business, so long as

they do not sell the forty-four kinds of prohibited items. In effect, the district court struck section 12.1–30–03 and modified the general prohibition of 12.1–30–01 by allowing any business to operate on Sunday so long as it does not sell the prohibited items.

## III. CONSTITUTIONAL CHALLENGES

Challengers argue that the Sunday closing law violates equal protection requirements of the United States constitution by unfairly discriminating between business interests in its classifications, by failing to protect its intended beneficiaries, and as a consequence of selective enforcement. Challengers argue that the statute is impermissibly vague under the due process clauses of both constitutions. They also assert establishment of religion and commerce clause claims. Finally, Challengers argue that the Sunday closing law is a special law prohibited by the North Dakota constitution.

They distinguish this case from those previously decided on three grounds. First, the current statute has not been before this court and, therefore, presents legislative classifications not yet subjected to constitutional review by this court. Second, among those parties challenging the statute are a business operated by Seventh Day Adventists and an individual Seventh Day Adventist. These parties challenge the statute on the ground of establishment of religion not addressed in *Materi*. Last, Challengers argue that this court has not reviewed the Sunday closing law under the special laws clause of the North Dakota constitution.

▮ When this court reviews the constitutionality of a statute, it will uphold the statute unless its challenger has demonstrated the constitutional infirmity. *Hall GMC, Inc. v. Crane Carrier, Inc.*, 332 N.W.2d 54, 61 (N.D.1983). Whether a statute violates the United States or North Dakota constitutions is a question of law and is, therefore, fully reviewable by this court. *See Nygaard v. Robinson*, 341 N.W.2d 349, 354 (N.D.1983).

## IV. EQUAL PROTECTION

### Standard of Review

▮ Generally, a statute that regulates social or economic matters without using suspect classifications or involving fundamental rights and which is challenged on federal equal protection grounds is reviewed under the rational-basis standard. *See Hanson v. Williams County*, 389 N.W.2d 319 (N.D.1986); *Kadrmas v. Dickinson Pub. Schools*, 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). Under this rational basis standard, we uphold legislation unless it is patently arbitrary and bears no rational relationship to a legitimate governmental purpose. *Kadrmas v. Dickinson Pub. Schools*, 402 N.W.2d 897, 902 (N.D.1987) *aff'd* 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988). Stated otherwise, we sustain a statute if any set of facts reasonably may be conceived to justify it. *Allied Stores v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959); *Snyder's Drug Stores, Inc. v. North Dak. St. Bd. of Pharm.*, 219 N.W.2d 140, 149 (N.D.1974).

▮ The United States Supreme Court has treated Sunday closing laws as social and economic legislation to be upheld on a demonstration of a rational basis. *McGowan v. Maryland*, 366 U.S. 420, 425–28, 81 S.Ct. 1101, 1104–06, 6 L.Ed.2d 393 (1961) [Sunday closing law upheld]. *See also Two Guys From Harrison–Allentown, Inc. v. McGinley*, 366 U.S. 582, 589–92, 81 S.Ct. 1135, 1139–40, 6 L.Ed.2d 551 (1961); *Gallagher v. Crown Kosher Super Market*, 366 U.S. 617, 622–24, 81 S.Ct. 1122, 1124–26, 6 L.Ed.2d 536 (1961). Challengers have not alleged that the current Sunday closing law uses suspect classifications or touches on fundamental rights; we conclude that the appropriate standard of review for Challengers' federal equal protection claims is that of a rational basis.

### Review of Statute

▮ Challengers' quarrel is with the statutory scheme which requires some stores to remain closed though their inventory includes items which are not prohibit-

ed from being sold, while their competitors are allowed to open and sell those same kinds of non-prohibited items on Sunday. In particular, Challengers argue that there is no rational basis for prohibiting a greeting card shop from opening on Sunday while allowing grocery stores to sell greeting cards on that day. This result occurs under the statute because the card shop is not one of the classes of businesses authorized to operate on Sunday under section 12.1–30–03, NDCC, and is therefore subject to the general prohibition of section 12.1–30–01, NDCC, while a grocery store is allowed to open and sell anything not prohibited by section 12.1–30–02, including greeting cards. The classifications also violate equal protection, say Challengers, because the simple use of a prohibited items list, rather than an allowable items list, is irrational, and the overall statutory scheme singles out retail sales from all other forms of commerce and labor. Finally, Challengers argue that the current scheme does not protect a majority of North Dakota workers and, therefore, fails to further the legislative purpose. These arguments, in similar form, have been presented before.

In *McGowan*, the United States Supreme Court was presented with the argument that a statute that allowed operators of bathing beaches and amusement parks to sell some merchandise while their competitors who sold the same merchandise, but not at a beach or a park, were prohibited from selling that merchandise, was unfair and violated equal protection. 366 U.S. at 428, 81 S.Ct. at 1106. This argument is essentially that many merchants sell the same goods, and the statute allows some of them, but not all, to sell the goods on Sunday. This legislative choice between merchants is related to the argument that the statute singles out retail sales. *See Two Guys From Harrison–Allentown, Inc.*, 366 U.S. at 589–90, 81 S.Ct. at 1139.

■ Legislatures are not required to achieve a perfect equality when drafting economic or social laws. If a reviewing court can conceive of a reason justifying the choice made by the legislature in service of a legitimate end, that court must sustain the statute against constitutional challenge. In *McGowan*, it was sufficient that recreational merchandise was sold near the place it would logically be used, and that employees of businesses distant from such places would benefit from the day of rest. 366 U.S. at 428, 81 S.Ct. at 1106. In *Two Guys From Harrison–Allentown, Inc.*, it was sufficient that retail businesses might present a greater threat of disruption to the intended restful atmosphere of the day because of increased motor traffic, the danger of competitors opening, and the large number of employees in retail trade. 366 U.S. at 591, 81 S.Ct. at 1140.

Nor is Challengers' complaint against the list of prohibited commodities, versus allowable commodities, entirely novel. The Pennsylvania statute reviewed in *Two Guys From Harrison–Allentown, Inc.* involved such a list. In that case the challengers argued "that to forbid the Sunday sale of only some items while permitting the sale of many others and to exclude only retailers from Sunday operation while exempting wholesalers, service dealers, factories, and those engaged in the other excepted activities defeats the State's alleged interest of providing a day of rest and tranquility for all." 366 U.S. at 589, 81 S.Ct. at 1139. The Supreme Court concluded, however, that the classifications were sufficiently rational to withstand constitutional review, noting that the legislature may address itself to parts of a field and neglect other parts of the same field. 366 U.S. at 590–92, 81 S.Ct. at 1139–40.

To find that the current North Dakota Sunday closing law violates federal equal protection, we would have to conclude that no conceivable reasons exist for the classifications drawn by the legislature, *i.e.*, that the classifications are patently arbitrary and bear no relationship to a legitimate governmental purpose. We can, however, divine reasons for the present statutes.

■ The purpose of the current law is to set aside a day of rest and recreation. *See Gamble Skogmo, Inc.*, 144 N.W.2d at 769. To accomplish this purpose, the statute begins with a general prohibition against con-

ducting business or labor. NDCC § 12.1–30–01. From this general prohibition, certain types of businesses are exempted. NDCC § 12.1–30–03. The exempted businesses fall into three categories: (1) necessary businesses, *e.g.*, lodging, hospitals, utilities; (2) businesses that further rest or recreation, *e.g.*, parks, zoos, theaters; (3) and various enterprises of limited commerce, *e.g.*, coin-operated laundries, rummage sales, gift shops in hospitals. The necessary business and recreation categories represent the kind of choices approved in *McGowan* and *Gamble Skogmo*. As for the instances of limited commerce, the legislature could reasonably have concluded that they would not unduly disrupt the intended atmosphere of rest.

In all cases, the prohibition of the sale of certain goods operates to assure that whatever commerce is conducted on Sunday, the level of activity will be something less than business in the "usual manner" of the other six days. NDCC § 12.1–30–02. The legislature could have reasonably concluded this serves the purpose of creating a day of rest by discouraging the proliferation of stores remaining open. It restricts the level of business that can be conducted in an open store, and assures that the overall customer "traffic" will be reduced on Sunday, which may, in effect, discourage some businesses from opening. *See Rothe v. S–N–Go Stores, Inc.*, 308 N.W.2d at 876.

■ The legislature's choice of a list of prohibited items rather than a list of allowable items is also supportable by reason. Under either method, the level of commerce would be reduced. The choice of a prohibited list reasonably could have been chosen because on the one hand, it represented more flexibility to businesses, and on the other hand, it was perceived as the method more easily enforced. The scheme conceivably provides incentive for stores to open, for instance, allowing a grocery store to sell more than necessities, and this in-

centive assures that *some* stores will be open to sell milk and eggs. As for the basis of the list itself, the list of prohibited commodities appears to have been drawn to encompass most of retail activity, preventing the sale of items that are not typically considered to be necessities. While the classifications drawn by the legislature may not be perfect, we cannot say that they lack a reasonable relationship to the legislative purpose.[2]

■ It is within the legislature's power to choose to achieve its goal in part, or in stages. It is not required to protect all workers or no workers; that some retail employees are able to enjoy the day of rest is sufficient. "The legislature may select one phase of one field and apply a remedy there, neglecting the others." *Williamson v. Lee Optical, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). As the district court noted, "[c]asual observation of Sunday business activities in this state confirms that Sunday is still devoted largely to rest and recreation."

Because there are apparent reasons for the choices made by the legislature, and those choices serve the legitimate legislative purpose, we conclude North Dakota's Sunday closing law has a rational basis sufficient to survive Challengers' federal equal protection claims.

## V. SPECIAL LAW

■ Challengers further argue that the Sunday closing law is a special law prohibited by the North Dakota constitution and ask that we review this argument using a heightened scrutiny greater than afforded under the rational basis standard. Our constitution says: "Except as otherwise provided in this constitution, no local or special laws may be enacted, nor may the legislative assembly indirectly enact special or local laws by the partial repeal of a general law but laws repealing local or

---

**2.** In fact, Challengers provide evidence of the success of the current scheme. Of the 117 tenant businesses of plaintiff West Acres Development, approximately 95 are not allowed to open on Sunday. App. 9. And, plaintiff Metro Drug Company demonstrates that some businesses that may be opened under section 12.1–30–03 do not in fact operate because "there is a lack of retail activity in the business district where [they are] located because of the fact that the other retail businesses in the district are not allowed to be open on Sunday." App. 12.

special laws may be enacted." N.D. Const. Art. IV, § 13. The special laws language has been construed by this court as constraining laws relating "only to particular persons or things of a class, as distinguished from a 'general law.' which applies to all things or persons of a class...." *State v. First State Bank,* 52 N.D. 231, 202 N.W. 391, 399 (1924). When this court examines a statute to decide whether a classification used is impermissibly particular under the North Dakota constitution, it examines the reasonableness of that classification. *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733, 739 (N.D.1988). A classification is reasonable if "[i]t bears alike upon all persons and things upon which it operates and it contains no provision that will exclude or impede this uniform operation upon all citizens, subjects and places within the state provided they are brought within the relations and circumstances specified in the statute." *Northwestern Bell Tel. Co. v. Wentz,* 103 N.W.2d 245, 256 (N.D.1960).

Challengers ask that we judge the reasonableness of the classifications used in the Sunday closing law according to intermediate scrutiny. North Dakota has a long history of special laws jurisprudence. *See Edmonds v. Herbrandson,* 2 N.D. 270, 50 N.W. 970 (1891). We have not found, and we have not been presented with, any case evaluating the classifications of a purported special law using the three-tiered, traditional equal protection analysis. We have employed intermediate scrutiny to judge the validity of statutory classifications in cases that involve different provisions of our constitution. *See Bellemare,* 420 N.W.2d at 736 [N.D. Const., Art. I, § 21]; *Hanson v. Williams County,* 389 N.W.2d 319, 322–23 (N.D.1986) [Art. I, §§ 9, 12, 21]; *Patch v. Sebelius,* 320 N.W.2d 511, 513–14 (N.D.1982) [Art. I, §§ 12, 21]; *Benson v. North Dakota Workmen's Comp. Bureau,* 283 N.W.2d 96, 98 (N.D.1979) [Art. I, §§ 1, 11, 13, 20 now numbered Art. I, §§ 1, 22, 12, 21]; *Herman v. Magnuson,* 277 N.W.2d 445, 450 (N.D.1979) [Art. I, § 11 renumbered Art. I § 22]; *Arneson v. Olson,* 270 N.W.2d 125, 136 (N.D.1978) [Art. I, § 20

renumbered Art. I, § 21]; *Johnson v. Hassett,* 217 N.W.2d 771, 774 (N.D.1974) [Art. I, §§ 11, 13, 20 renumbered Art. I, §§ 22, 12, 21].

 The standard of review for a statutory classification challenged under the special laws provision of our constitution is reasonableness, to be upheld if it "is natural, not arbitrary, and standing upon some reason having regard to the character of the legislation of which it is a feature." *Miller v. Norton,* 22 N.D. 196, 132 N.W. 1080, 1091 (1911). In *Edmonds v. Herbrandson,* one of our earliest special laws cases, we struck a statute because the necessary relationship between the classification and purpose of the law was missing. There, the statute prevented the relocation of some county seats based on time. The court noted that the purpose of the statute was to prevent the easy relocation of county seats when the county had erected expensive buildings. The statute, however, had the effect of dividing the state into counties which had built expensive courthouses and jails before the enactment, and those building after, and prevented the relocation only where the buildings predated the statute. 50 N.W. at 972. The reason for the classification, time, bore no relationship to the statutory purpose, preventing waste. The classification was not "natural," but was "artificial," and did not "stand upon some reason, having regard to the character of the legislation." *Id.* at 971. Here, the Sunday closing law does implement the legislative purpose of rest and recreation by limiting commercial activities to a kind or degree judged by the legislature not to disrupt the intended atmosphere. And, the law has the required uniform effect because every business of a certain type and every commodity of a certain kind is regulated in order to achieve what is a universally accepted legitimate governmental purpose. We conclude that the Sunday closing law is not a special law prohibited by the North Dakota constitution.

## VI. SELECTIVE PROSECUTION

 Challengers also argue that the "selective prosecution" of the Sunday clos-

ing law by state's attorneys and the Attorney General, the failure to criminally prosecute violators, deprives them of equal protection. This argument was raised and rejected in *Gamble Skogmo*, "Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection." *Moss v. Hornig*, 314 F.2d 89, 92 (2d Cir. 1963) (quoted in *Gamble Skogmo*, 144 N.W.2d at 765). The fact that others are *not* prosecuted for breaking the law does not violate the equal protection of those who follow the law. There must be an intentional or purposeful discrimination against the party challenging the law. In *Gamble Skogmo*, a discount store charged with selling merchandise in violation of the Sunday closing law, identified other violators and argued that the failure to prosecute those offenders proved selective enforcement against it. 144 N.W.2d at 765. While this disparity might demonstrate errors in judgment on the part of officials charged with enforcing the law, this court concluded the disparity did not demonstrate an *intentional* violation of the principle of practical uniformity. So too in this case. We conclude that the Sunday closing law does not violate the equal protection clause of the federal constitution.

## VII. DUE PROCESS

 Challengers argue that the Sunday closing law violates the due process clause because it is impermissibly vague, and ask that we strike the entire statute. In order to invalidate an entire statute for vagueness, however, the statute must be vague in all its applications. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982).

 The due process clauses of the state and federal constitutions require definiteness of criminal statutes so that the language, when measured by common understanding and practice, gives adequate warning of the conduct proscribed and

marks boundaries sufficiently distinct for judges and juries to fairly administer the law. *State v. Johnson*, 417 N.W.2d .365 (N.D.1987). In order to survive a vagueness challenge, a statute must meet two requirements: (1) it must provide adequate warning as to the conduct proscribed, and (2) it must establish minimum guidelines to govern law enforcement. *State v. Schwalk*, 430 N.W.2d 317 (N.D.1988). A criminal statute is not unconstitutionally vague merely because it does not specifically designate the various different means by which a crime is committed. *State v. Tranby*, 437 N.W.2d 817 (N.D.1989).

Turning to the Sunday closing law, we believe that shopkeepers can know, by reading the statute, that they cannot sell a stove or a refrigerator or a television set or a lawnmower. Many of the sections of the prohibited commodities list use terms that are understandable to judges, juries, shopkeepers, and police officers. It cannot be said, therefore, that the statute is vague in all its applications. Because this statute is not vague in all its applications and because challengers are not themselves being prosecuted for allegedly vague applications of the law, Challengers' argument fails.

We conclude that the law does not violate the due process clause of either the state or federal constitution.

## VIII. ESTABLISHMENT CLAUSE CLAIM

 Challengers argue that the statute respects an establishment of religion.[3] The legislature's choice of Sunday, the traditional Christian sabbath, as the common day of rest does not constitute an establishment of religion. *McGowan*, 366 U.S. at 430–53, 81 S.Ct. at 1107–19; *Gamble Skogmo*, 144 N.W.2d at 766–69. The addition of a clause accommodating the sabbath practices of those observing a day other than Sunday does not render the statute infirm. Challengers argue that the

**3.** Challengers do not renew their free exercise of religion argument before this court. As to their establishment of religion argument. Challengers invoke the state constitution in their brief without citing any provision of that document and without making any argument separate and apart from federal law. Accordingly, we look to federal authority in resolving Challengers' establishment of religion argument.

Sabbatarian exemption is tied directly to the religious practices and beliefs of non-Sunday worshipers, and is therefore a law respecting religion. But the United States Supreme Court has said the accommodation of religious practices is a proper legislative end. *See Corporation of Presid. Bishop v. Amos*, 483 U.S. 327, 334, 107 S.Ct. 2862, 2867, 97 L.Ed.2d 273 (1987). If the statute removes burdens placed on religious practitioners without directly advancing or inhibiting religion, and without excessively entangling the government with religion, the statute does not violate the constitution. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971). To work this accommodation, the legislature can benefit religious groups; special consideration given to religious groups is not per se invalid. *Corporation of Presid. Bishop*, 483 U.S. at 338, 107 S.Ct. at 2869. It seems logical, therefore, that the simple description of the practices sought to be accommodated does not render a statute invalid. · And, the fact that a sabbatarian who opens for business on Sunday, within the terms of section 12.1–30–01(2), may achieve some advantage is no more an establishment of the Sabbatarian's religion than the original prohibition on business. *See McGowan*, 366 U.S. at 429–53, 81 S.Ct. at 1106–19.

## IX. COMMERCE CLAUSE CLAIMS

State laws violate the federal constitution when they discriminate against interstate commercial interests. To be invalidated under the commerce clause, the Sunday closing law would have to impose unequal burdens on local and interstate commerce, or excessively impact interstate businesses, or add a burden to an industry on a topic preemptively regulated by Congress. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970); *Rice v. Santa Fe Elev. Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). The burden in this case, the inability to conduct business on Sunday, falls equally upon local and interstate commercial interests. And, Congress has not preempted state regulation of days of rest.

Therefore, Challengers' commerce clause claims fail.

## X. CUMULATIVE EFFECT

Finally, Challengers argue that the "total effect" of the statute, containing so many inconsistencies and vagaries that it "results in the lack of enforcement at the cash register," requires its invalidation because it is "ineffectual, irrational, and discriminatory." In essence, Challengers argue that the Sunday closing law is unwise and oppressive. We cannot improve upon the response to a similar argument and so we repeat it:

> "A court has no power to declare a statute invalid on the ground of unjust and oppressive provisions, unless such provisions contravene the state or federal constitution. 'The courts are not the guardians of the rights of the people of the State, except as those rights are secured by some constitutional provision which comes within the judicial cognizance.' [Citation omitted.] 'The protection against, and remedy for, unwise or oppressive legislation, within constitutional bounds, is by appeal to the justice and patriotism of the people themselves, or their legislative representatives.' [Citation omitted.] 'The judiciary can only arrest the execution of a statute when it conflicts with the constitution.' [Citation omitted]." *Asbury Hospital v. Cass County*, 72 N.D. 359, 7 N.W.2d 438, 454 (1943).

Because we conclude there is no conflict between the Sunday closing law and either the United States or North Dakota constitutions, Challengers' remedy is with the legislature.

Accordingly, we reverse that part of the judgment that declares section 12.1–30–03, NDCC, unconstitutional and modifies section 12.1–30–01, NDCC.

ERICKSTAD, C.J., and LEVINE, MESCHKE, GIERKE and VANDE WALLE, JJ., concur.